## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN BERNARD** and **WILLIAM BERNARD,** individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| **BANK OF NEW YORK MELLON, NATIONAL ASSOCIATION**, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

## COMPLAINT – CLASS ACTION

1.      This is an action against defendant BNY Mellon, National Association for breach of its fiduciary and statutory duties to the plaintiffs, who are beneficiaries of a trust of which BNY Mellon is the trustee. As the trustee, BNY Mellon is required to invest the assets of the trust prudently in the interests of the beneficiaries of the trust, not in its own interests, and to exercise reasonable care, skill, and caution in doing so. When a trustee decides that a trust should buy shares of a mutual fund in a given category of asset, then its duties to be loyal to its beneficiaries and to exercise reasonable care, skill, and caution require the trustee to consider well-performing mutual funds in that category, no matter who manages those funds. BNY Mellon breached these basic duties when it purchased shares in mutual funds on behalf of the trust of which the plaintiffs are beneficiaries. BNY Mellon invested 95 percent of those assets in mutual funds managed by The Dreyfus Corporation, a corporate affiliate of BNY Mellon. Dreyfus is a bad asset manager. In recent years it has ranked consistently in the bottom quartile, and sometimes in the bottom decile, of asset managers. Unsurprisingly, the Dreyfus mutual funds in which BNY Mellon invested the assets of the trust were usually among the worst performing

funds in their respective categories. BNY Mellon's breach of its duty to invest in well-performing mutual funds in any given category caused significant damage to the trust. Had BNY Mellon invested the assets of the trust in well-performing funds in the same categories of assets, then the trust would have earned over $100,000 more in investment income or appreciation in just the last five years.

2.     Plaintiffs bring this action on behalf of themselves and all other persons or entities that are beneficiaries of trusts of which BNY Mellon was or is the trustee, had or has discretion in the investment of assets, and any of whose assets BNY Mellon invested in mutual funds managed by its affiliate, Dreyfus.

PARTIES, JURISDICTION, AND VENUE

3.     Plaintiffs John Bernard and his nephew William Bernard are beneficiaries of a trust established by agreement dated November 17, 1954, between Aglae Van Valzah (John Bernard's grandmother and William Bernard's great-grandmother) as Grantor and The Bank of New York as Trustee. The trust's assets have been in trust continuously with The Bank of New York and its corporate successor BNY Mellon ever since. John Bernard and William Bernard are citizens and residents of the State of Louisiana.

4.     BNY Mellon is a national banking association with its principal place of business in Pittsburgh, Pennsylvania.

5.     This Court has jurisdiction of this action under 28 U.S.C. § 1332(d)(2)(A) because the matter in controversy exceeds $5,000,000, and this is a class action in which members of the class of plaintiffs are citizens of states other than Pennsylvania, the Commonwealth of which BNY Mellon is a citizen, and number more than 100.

6.      Venue is proper in this District because BNY Mellon has its principal place of business in this District.

### THE DUTIES OF A TRUSTEE IN INVESTING THE ASSETS OF A TRUST

7.      The Van Valzah trust is governed by the law of New York.

8.      BNY Mellon has sole discretion to invest the assets of the trust.

9.      Under the law of New York, a trustee is a fiduciary and must comply with the New York Prudent Investor Act, NY EPTL § 11-2.3. Under that Act:

- "A trustee shall exercise reasonable care, skill and caution to make and implement investment and management decisions as a prudent investor would for the entire portfolio, taking into account the purposes and terms and provisions of the governing instrument." EPTL § 11-2.3(b)(2).

- "For a bank . . . which serves as a trustee, . . . the exercise of skill contemplated by the prudent investor standard shall require the trustee to exercise such diligence in investing and managing assets as would customarily be exercised by prudent investors of discretion and intelligence having special investment skills." EPTL § 11-2.3(b)(6).

Implicit in the duties of a trustee under this statute is the duty to administer the trust solely in the interest of the beneficiaries. RESTATEMENT (THIRD) OF TRUSTS §§ 78, 90 (2007).

### FINANCIAL ASSETS, THEIR CORRESPONDING INDICES, AND THE RELATIVE PERFORMANCE OF MUTUAL FUNDS

10.      Financial assets are conventionally divided into categories. One authoritative source, the research firm Morningstar, divides collective investment funds like mutual funds into nine groups: U.S. Equity, Sector Equity, Allocation, International Equity, Alternative, Commodities, Taxable Bond, Municipal Bond, and Money Market. Each of these groups in turn comprises between three and 20 more specific categories of assets, a total of 122 categories in the nine groups.

11.    Each category of asset has one or more corresponding indices, that is, numerical measures of change in the overall value of that category of asset. Morningstar has selected what it considers the best index for each of its nine groups and 122 categories of financial assets. For example, Morningstar's index for its U.S. Equity group is the Standard & Poor's 500 Total Return Index. For the Large Value category within that group, its index is the Russell 1000 Value Total Return Index. For the Mid-Cap Blend category, its index is the Russell Midcap Total Return Index.

12.    Morningstar's chosen indices are widely used in the financial industry as benchmarks against which to measure the relative performance of different mutual funds and other collective investment funds in the same categories.

### THE PROCESS OF INVESTING THE ASSETS OF A TRUST

13.    In deciding how to invest the funds of a trust, a trustee generally analyzes the purposes and circumstances of the trust and makes three decisions: (1) which categories of assets the trust should invest in, (2) how much of the trust's assets should be invested in each category, and (3) whether buying shares in a mutual fund is the best way for the trust to invest in each category of asset. Because these three decisions depend on the specific purposes and circumstances of each trust, a trustee makes these decisions individually with respect to each trust. BNY Mellon made and continues to make such decisions when investing the funds of the Van Valzah trust. Plaintiffs make no complaint about how BNY Mellon has made these decisions for the Van Valzah trust.

14.    When a trustee decides that buying shares in a mutual fund is the best way for a trust to invest in a given category of asset, then it makes a fourth decision, which mutual fund in that category to buy shares in. This decision involves only the comparison of different mutual

funds in that category of asset and (except perhaps in the rarest of circumstances) nothing about the trusts for which the trustee has decided to buy shares in a mutual fund in that category. Thus this fourth decision is common to all such trusts. If a bank like BNY Mellon were the trustee of many trusts and decided that one hundred of them should buy shares in a mutual fund in that given category of asset, there would be nothing about the trusts that would make one mutual fund better for one trust and another mutual fund better for another trust (again, except perhaps in the rarest of circumstances). The only question would be which mutual fund in that category of asset is best for all the trusts for which the trustee has decided to buy shares in a mutual fund in that category. This is the decision by BNY Mellon that plaintiffs complain of.

15.     Having decided to buy shares in a mutual fund in a given category of asset, a prudent trustee – that is, a trustee acting as a prudent investor would act – buys shares in a fund that has been among the better performing funds in that category, irrespective of which entity manages that fund. A prudent trustee does not favor funds managed by a single asset manager. Moreover, a prudent trustee monitors the performance of the mutual fund in which it bought shares and, if that fund ceases to be among the better performing in its category, sells its shares in that fund and buys shares in a better performing fund in the same category.

### BNY MELLON'S IMPRUDENCE IN INVESTING THE ASSETS OF THE VAN VALZAH TRUST IN SHARES OF MUTUAL FUNDS

16.     In buying shares of mutual funds for the Van Valzah trust, BNY Mellon did not buy shares in well-performing funds in each category of asset in which it decided that the Van Valzah trust should invest. Rather, BNY Mellon favored poorly performing funds managed by its affiliate Dreyfus. BNY Mellon invested approximately 95 percent of the assets of the Van Valzah trust in mutual funds managed by Dreyfus (and the other five percent in cash).

17.     BNY Mellon did not act as a prudent investor would act when it invested almost all the assets of the Van Valzah trust in mutual funds managed by a single asset manager, especially so bad a manager as its affiliate Dreyfus.

18.     *Dreyfus's bad record compared to the records of the largest asset managers*. In recent years, Dreyfus has always been among the largest 100 asset managers as measured by assets under management. Dreyfus's mutual funds have consistently performed worse than other mutual funds in the same categories of assets. The graph below illustrates just how poor Dreyfus's record has been in the last 15 years. The axis at 0% represents the benchmark indices for the categories in which Dreyfus managed funds in those years. The colored lines represent the cumulative performance of mutual funds managed by the five largest asset management firms (as measured by assets under management over the last 15 years) in the same categories against those same benchmarks. The dotted red line represents the average cumulative performance of funds managed by the largest 15 asset managers, those with over $100 billion of average assets under management over the last 15 years. The black line represents the cumulative performance of funds in those same categories managed by Dreyfus. As is obvious, Dreyfus's funds have performed very badly compared to funds of better asset managers over the entire 15-year period. (All information presented here about the performance of mutual funds is net of their fees.)



19.    Dreyfus's bad record compared to the records of the largest asset managers is obvious not only looking back from today. It was also obvious in each year up to today. In Appendix 1, for example, are the same graphs as the one above, but for the 10-year periods ending in 2013, 2014, 2015, 2016, and 2017. There is no material difference in what those graphs show. Dreyfus's record was bad compared to the records of the largest managers in all five 10-year periods.

20.    *Dreyfus's low rank among large asset managers.* Among the largest 100

managers of mutual funds (measured by assets under management) in the last 15 years, Dreyfus

has consistently ranked near the bottom in the cumulative performance of its funds. As shown in

the graph below, in the years since 2003 Dreyfus ranked 91st of 100. (The axis at 0% represents

the performance of the benchmarks for the categories in which these managers managed funds in

those years.)



21.    As shown by the graphs in Appendix 2, Dreyfus has ranked near the bottom of

large asset managers not just in the last 15 years, but also in each of the 10-year periods ending

in 2013 (86th), 2014 (87th), 2015 (85th), 2016 (81st), and 2017 (75th).

22.    *The magnitude of losses caused by the poor performance of Dreyfus's funds.*

Dreyfus's poor record as an asset manager has cost investors in the funds that it manages billions

of dollars. The graph below illustrates the magnitude of those losses. The orange line represents

the cumulative amount that investors in Dreyfus's funds have lost because their assets were

invested in those funds rather than in index funds that charged annual fees of 20 basis points. (Plaintiffs do not allege that BNY Mellon was required to invest assets of the Van Valzah trust only in index funds or necessarily in index funds at all. The investment results of index funds are used here as a proxy, admittedly somewhat inexact, for results that well-performing funds in the same categories of assets in which Dreyfus managed funds, would have achieved.) The purple line represents the cumulative compounded loss that those investors have suffered, that is, their losses plus the investment income they have forgone because they could not invest the lost amounts in index funds that charged annual fees of 20 basis points. (A fee of 20 basis points is a conservative assumption because 90 percent of assets in index funds are in funds that charge 20 basis points or less.) (Without discovery, plaintiffs cannot know how much of the money invested in Dreyfus's funds belonged to trusts of which BNY Mellon was the trustee.)



23.    *The bad mutual funds in which BNY Mellon invested the assets of the Van Valzah trust.* In recent years, BNY Mellon invested the assets of the Van Valzah trust in Dreyfus mutual funds in 11 categories of assets. In each of those categories, there were between 17 and 347 mutual funds (including the Dreyfus funds) with assets of at least $100 million. BNY Mellon did not invest the assets of the Van Valzah trust in even a single one of those hundreds of other funds. Rather, it invested the assets of the trust exclusively in funds managed by its affiliate Dreyfus. Not surprisingly, as shown below, given Dreyfus's bad record as an asset manager, its funds in which BNY Mellon invested assets of the Van Valzah trust were almost never among the well-performing funds in each category and were usually among the worst-performing funds. (The very few years in which a Dreyfus fund was even in the top quartile of funds in the same category are shown in red.)

**Percentile Rank (by Performance in Most Recent Three Years) of Dreyfus Mutual Funds in Which BNY Mellon Invested Assets of Van Valzah Trust Among all Mutual Funds in Same Category**

| Category of Asset | Fund | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|
| Diversified Emerging Mkts | BNY Mellon Emerging Markets Fund | 74th | 76th | 68th | 70th | | |
| | Dreyfus Diversified Emerging Markets | | | 37th | 37th | | |
| Foreign Large Blend | Dreyfus Diversified International | 53rd | 74th | 54th | 55th | 34th | 27th |
| Foreign Small/Mid Blend* | Dreyfus International Small Cap Fund | | | | | | |
| Intermediate-Term Bond | BNY Mellon Bond Fund | 80th | 71st | 71st | 60th | 60th | 42nd |
| Large Blend | BNY Mellon Tax-Sensitive Large Cap | | 76th | 71st | 78th | 44th | 19th |
| Large Value | BNY Mellon Income Stock Fund | | | | | | 12th |
| Mid-Cap Growth | BNY Mellon Mid Cap Stock Fund | 68th | 77th | 34th | 40th | 19th | 63rd |
| | BNY Mellon Small/Mid Cap Fund | 91st | 98th | 85th | 50th | 40th | 29th |
| Multialternative | Dreyfus Alternative Diversifier | | | | | | 61st |
| Multisector Bond | Dreyfus Yield Enhancement Strategy | | | | | | 52nd |
| Short Government | BNY Mellon Short Term US Govt Secs | | 80th | 73rd | 53rd | 74th | |
| Short-Term Bond | BNY Mellon Intermediate Bond Fund | 96th | 89th | 93rd | 85th | 24th | 41st |

* Three years of data not available.

24.     Had BNY Mellon invested the assets of the Van Valzah trust in well-performing mutual funds in each of these same categories, rather than in Dreyfus's poorly performing funds, then the trust would have earned over $100,000 more in investment income or appreciation in just the last five years.

25.     The types of information presented above about Dreyfus's bad record as an asset manager and the poor performance of its mutual funds have been available to BNY Mellon for many years.

26.     A partial explanation for the poor performance of Dreyfus's funds is that the portfolio managers who manage them (employees of Dreyfus) have less of their own money

invested in those funds (or less "skin in the game") than do portfolio managers at other fund managers (in whose funds BNY Mellon should have invested the assets of the Van Valzah trust). The table and graph below illustrate, on the left for Dreyfus and on the right for an asset-weighted average of the largest 15 managers of mutual funds, the percentages of their assets under management that are in funds in which at least one of their portfolio managers has invested each specified amount. So, for example, 7.3 percent of Dreyfus's assets under management are in funds in which at least one of Dreyfus's employed portfolio managers has invested $1 million or more. By contrast, among the largest 15 managers, fully 47.8 percent of assets under management are in funds in which at least one portfolio manager has invested $1 million or more.

**Percent of Managed Assets in Funds in Which at Least One Portfolio Manager Has Invested:**

|  | Dreyfus | Top 15 |
|---|---|---|
| Over $1 million | 7.3% | 47.8% |
| $500,001-$1 million | 2.1% | 3.5% |
| $100,001-$500,000 | 20.4% | 10.5% |
| $1-$100,000 | 6.1% | 7.8% |
| $0 | 64.1% | 30.3% |

The same is shown graphically below:

**Percent of Managed Assets in Funds in Which at Least One Portfolio Manager Has Invested:**

Over $1 million

$500,001-$1 million

$100,001-$500,000

$1-$100,000

$0



## NO ALLEGATION OF FRAUD OR UNTRUE OR MISLEADING STATEMENTS

27.     Plaintiffs do not allege that BNY Mellon committed fraud or that it made any untrue or misleading statement on any subject.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of the following nationwide class:

> All beneficiaries of trusts of which BNY Mellon (a) is or was a
> trustee, (b) has or had discretion to invest assets, and (c) invested
> any assets, or left assets invested, in mutual funds managed by The
> Dreyfus Corporation. Excluded from the class are BNY Mellon
> and its corporate parent and affiliates; the directors, officers,
> employees, and agents of any of them; and the United States
> Government.

29.    *Numerosity.* BNY Mellon is trustee of thousands of trusts, of which there are

thousands of beneficiaries throughout the United States. The large number of members of the

proposed class and their dispersion throughout the country make the joinder of all members of

the proposed class impracticable.

30.    *Questions of law or fact common to the class.* The principal question of law in this

action is whether a trustee violates its fiduciary and statutory duties by investing assets of trusts

(or leaving assets invested) in mutual funds managed by only a single manager, and a bad

manager at that, rather than investing those assets in well-performing funds in the same

categories of assets. This question of law is common to all members of the proposed class.

31.    There are no material differences in the laws of any of the states that will apply to

this question. The New York Prudent Investor Act, which applies to the Van Valzah trust, is

modeled on the Uniform Prudent Investor Act. Forty-three other states, including the

Commonwealth of Pennsylvania, and the District of Columbia have also enacted statutes

modeled on the UPIA. There are no material differences between the law of those 44

jurisdictions in the standard of conduct required of a trustee when investing assets of a trust. Nor

are there any material differences in the laws of the seven states that have not enacted statutes

modeled on the UPIA. All of them require by common law essentially the same standard of

conduct that is required in the states that have enacted statutes modeled on the UPIA.

32.     The Court will not be required to conduct a conflict-of-laws analysis. As noted above, there are no material differences in the laws of the different states on the standard of conduct required of a trustee. On information and belief, most of BNY Mellon's trust agreements provide that they are governed by the laws of a certain state. Thus, even if there were material differences in the laws of different states, the law that governs each trust agreement would be the law that applies to the duties of the trustee to that trust.

33.     There may be differences in the statutes of limitations that apply to claims by residents of different states. Even if there are differences in the statutes of limitations, however, applying different class periods to different members of the class is a simple matter of programming a computer to apply different cutoff dates when analyzing the records of trusts to which different class periods apply.

34.     Dreyfus's record as an asset manager, the performance of its mutual funds in which BNY Mellon invested the assets of trusts, and whether BNY Mellon complied with its fiduciary duties as a trustee by investing assets of trusts in Dreyfus's funds (or leaving assets invested in those funds), rather than in well-performing funds in the same categories of assets, are questions of fact that are common to all members of the proposed class.

35.     *Typicality.* The claims of plaintiffs are typical of the claims of the members of the proposed class because all such claims are that BNY Mellon violated its duties as a trustee by investing assets of trusts in Dreyfus's funds (or leaving assets invested in those funds) rather than investing them in well-performing funds in the same categories of assets, especially when Dreyfus had so poor a record as an asset manager.

36.     *Fair and adequate protection of the interests of the class.* There is no conflict between the interests of the plaintiffs and other members of the proposed class. Plaintiffs'

interests are congruent with and not antagonistic to the interests of the other members of the proposed class.

37.     Plaintiffs are represented by skilled counsel who have long and successful experience in representing plaintiffs against financial institutions in large and complex cases and who invested substantial time and money in the analysis of Dreyfus's performance presented in this complaint.

38.     *Predominance of common questions.* The common questions described above are subject to generalized, class-wide proof of Dreyfus's poor record as an asset manager and of BNY Mellon's breach of its duties in investing assets of trusts in Dreyfus's funds (or leaving assets invested in those funds), rather than in well-performing funds in the same categories of assets. The main question individual to each member of the class will be the amount of that member's damages, but that question can be answered by computer analysis of the records of the trust of which each member is a beneficiary and will require no evidentiary hearing by the Court.

39.     *Superiority of class action.* A class action in this Court is superior to other methods of adjudicating this controversy because: (a) the claims of each member of the proposed class are small in relation to the cost of pursuing them, so few if any members of the proposed class will pursue their claims individually; (b) members of the proposed class have no interest in pursuing their claims separately because there is no conflict between their claims and those of the plaintiffs, and the plaintiffs will vigorously represent the interests of all members of the proposed class; (c) there is no governmental agency that will enforce the fiduciary duties of BNY Mellon, so a class action is the only way in which those duties will be enforced; and (d) there will be no unusual difficulties in managing this class action.

## CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

40.     BNY Mellon violated its fiduciary duties under the New York Prudent Investor Act by investing the assets of the Van Valzah trust (or leaving those assets invested) in funds managed by Dreyfus rather than in well-performing funds in the same categories of assets because, in doing so:

(a)     BNY Mellon did not exercise such care, skill, caution, and diligence in investing and managing the assets of the Van Valzah trust as would customarily be exercised by prudent investors of discretion and intelligence having special investment skills; and

(b)     BNY Mellon acted in its interests or the interests of its corporate affiliate Dreyfus, not solely in the interests of the beneficiaries of the Van Valzah trust.

WHEREFORE, plaintiffs respectfully demands judgment against BNY Mellon (a) certifying this action as a class action with plaintiffs as representatives of the class and the undersigned as class counsel, and (b) for damages in amounts to be determined at trial, and for such other and further relief as the Court may deem just.

Dated: June 15, 2018

Thomas J. Farrell, Esquire
PA ID #48976
Farrell & Reisinger, LLC
300 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 894-1380
*Attorney for Plaintiffs*

David J. Grais (pro hac vice application
forthcoming)
Kathryn C. Ellsworth (pro hac vice application
forthcoming)
Grais & Ellsworth LLP
950 Third Avenue
24th Floor
New York, New York 10022
Tel: (212) 755-0100
*Attorneys for Plaintiff*

Appendix 1:













Appendix 2:











