IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| JOHN BERNARD, WILLIAM BERNARD, PAMELA MARTIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiffs,<br><br>vs.<br><br>BNY MELLON, N.A.,<br><br>Defendant, | 2:18-CV-00783-RJC |

### REPORT AND RECOMOMENDATION

**I.     Recommendation**

This civil class action was initiated in this court on June 15, 2018, by Plaintiffs, John Bernard and William Bernard ("the Bernards"), who are the beneficiaries of the Van Valzah trust, against BNY Mellon, NA, trustee of the Van Valzah trust. In their second amended complaint ("SAC") (ECF No. 66), Plaintiffs[1] assert a cause of action against BNY Mellon for breach of fiduciary and statutory duties as trustee. SAC (ECF No. 66) at ¶¶ 61-62. This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1332.[2] *Id*. at ¶ 6.

---

[1] The Bernards filed their original complaint on behalf of themselves and others similarly situated. In the SAC, the Bernards added an additional individual plaintiff, Pamela Martin, as beneficiary of the Finkenauer trust.

[2] Specifically, this court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A). SAC (ECF No. 66) at ¶ 6. The matter in controversy exceeds $5,000,000, and this is a class action in which members of the class of Plaintiffs are citizens of states other than Pennsylvania, the Commonwealth of which BNY Mellon is a citizen, and number more than 100. *Id*.

Presently before the court is a motion by BNY Mellon to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) (regarding lack of subject matter jurisdiction/standing) and 12(b)(6) (regarding failure to state a claim). (ECF No. 75). For the reasons that follow, it is respectfully recommended that BNY Mellon's motion be denied.

**II.    Report**

    **A.  Procedural History and Factual Allegations**

The Bernards filed their initial complaint on June 15, 2018 (ECF No. 1). BNY Mellon filed its first motion to dismiss on August 13, 2018 (ECF No. 12), and in response, the Bernards filed a First Amended Complaint ("FAC") (ECF No. 17) on September 6, 2018. The first motion to dismiss was then dismissed as moot. (ECF No. 18). BNY Mellon filed its second motion to dismiss on October 4, 2018. (ECF No. 31). On June 14, 2019, the court denied that motion. (ECF No. 58). By agreement, on September 11, 2019, Plaintiffs filed the SAC. (ECF Nos. 64-66). On October 15, 2019, BNY Mellon filed its third motion to dismiss with brief in support (ECF Nos. 74, 75), and the matter has been fully briefed and is ripe for disposition.

The allegations in the SAC are as follows. The Bernards are citizens of Louisiana. SAC (ECF No. 66) at ¶ 3. The Van Valzah trust was established by agreement dated November 17, 1954, between Aglae Van Valzah, an ancestor of the Bernards, as Grantor, and The Bank of New York as Trustee. The Van Valzah trust's assets have been in trust continuously with The Bank of New York and its corporate successor, BNY Mellon, since its creation. *Id*. The trust is governed by the law of New York. *Id*. at ¶ 8.

Plaintiff Pamela Martin is a citizen and resident of Pennsylvania. *Id*. at ¶ 4. The Finkenauer trust was established by agreement on October 5, 1962, by Martin's grandfather, Elmer Robert Finkenauer, as Grantor, and the Girard Trust Corn Exchange Bank as Trustee. The Finkenauer

trust's assets have been in trust continuously with the Girard Trust Corn Exchange Bank and its corporate successors, now BNY Mellon, since that time. *Id*. The Finkenauer trust is governed by the law of Pennsylvania. *Id*. at ¶ 11.

BNY Mellon is a national banking association with its principal place of business in Pittsburgh, Pennsylvania. *Id*. at ¶ 5. As beneficiaries, the Plaintiffs have no control over how BNY Mellon invests the assets of the trusts. *Id*. at ¶¶ 9, 12. BNY Mellon is a fiduciary, and under the laws of New York and Pennsylvania, must act as a prudent investor of discretion and intelligence having special investment skills. *Id*. at ¶ 10, *citing* New York Prudent Investor Act ("the New York Act"), NY EPTL § 11-2.3, and *id*. at ¶ 13, *citing* the Pennsylvania Prudent Investor Rule ("the Pennsylvania Act") (collectively, "the Acts"), 20 Pa.C.S. §§ 7201-7214. Generally speaking, the duties of fiduciaries under the Acts are substantially the same, as both are modeled after the Uniform Prudent Investor Act. *See id.* at ¶ 51.

In the SAC, by way of background, Plaintiffs set forth the decision-making process in which trustees generally engage when deciding to invest in mutual funds. According to Plaintiffs, "collective investment funds like mutual funds" are divided into nine groups, which are then divided into specific asset categories. *Id*. at ¶ 15. There are a total of 122 asset categories in the nine groups. *Id*. Each asset category has one or more corresponding indices. *Id*. at ¶ 16. Indices are used as benchmarks against which to measure relative performance of different mutual funds and other collective investment funds. *Id*.

There are two kinds of mutual funds – index funds and actively-managed funds ("active funds"). *Id*. at ¶ 17. Plaintiffs aver that most index funds generate a higher return than active funds, when taking into account the higher fees associated with active funds. *Id*. at ¶ 21. When managing the assets of a trust, a trustee considers in which asset categories to invest, how much

of the trust's assets should be invested in each category, and whether a mutual fund is the best way to invest in that category. *Id*. at ¶ 26.  Plaintiffs assert no issues with respect to these decisions of BNY Mellon as trustee of the trusts.

It is a fourth decision, "which mutual fund in that category to buy shares in," about which Plaintiffs complain. *Id*. at ¶ 27. Plaintiffs aver that "[w]ith few exceptions, BNY Mellon channeled the money of the trusts into active funds managed by Dreyfus."[3]  *Id*. at ¶ 42. According to Plaintiffs, "[t]hroughout the period from 2003 to the present, the Dreyfus active funds performed worse than index funds over all four periods (three, five, 10, and 15 years) at the end of every one of those years." *Id*. at ¶ 44.  "Thus, [Plaintiffs contend that] at no time in the class period was there a reasonable basis to think that Dreyfus active funds were likely to perform better than the index funds in the future, and therefore no reasonable basis for a trustee to channel trust money into those funds." *Id*.  Plaintiffs aver that these decisions resulted "in the aggregate to hundreds of millions or billions of dollars of forgone returns." *Id*.  It is this allegation that forms the basis of Plaintiffs' cause of action for breach of fiduciary duty against BNY Mellon.  Specifically, Plaintiffs allege the following.

> When a trustee observes that mutual funds in which it has invested trust money are persistently performing worse than index funds in the same asset categories (as BNY Mellon observed or should have observed throughout the class period), and the trustee has no reasonable basis to think that their performance is likely to improve in the near future (as BNY Mellon had no reasonable basis to think that Dreyfus's active funds were likely to outperform index funds in the same asset categories), it is imprudent of the trustee to leave the trust money invested in those funds or to invest more trust money in those funds. The trustee must instead invest the money i[m]prudent investments, which could be lowest-cost index funds in the same asset categories or active funds in those categories that the trustee has investigated and reasonably thinks are likely to perform better than index funds in the future. Despite the dismal performance of Dreyfus active funds starting 15 years before the class period and continuing to the present, BNY Mellon did not do so.

---

[3] Dreyfus is a corporate affiliate of BNY Mellon. SAC (ECF No. 66) at ¶ 1.

SAC (ECF No. 66) at ¶ 45.  According to Plaintiffs, BNY Mellon violated its duties under the Acts by channeling the assets of the Van Valzah and Finkenauer trusts, which it intended to invest in mutual funds, "in mutual funds in the Dreyfus active funds that were on its list of favored investments rather than in lowest-cost index funds in the same asset categories or in active funds that BNY Mellon investigated and reasonably thought were likely to produce higher returns in the future than index funds in the same asset categories." *Id*. at ¶¶ 61-62.

Although this court makes no recommendation as to the propriety of the class action itself, the class allegations include the following proposed nationwide class:

> All beneficiaries of trusts (a) that existed on or after June 15, 2013, and of which BNY Mellon is or was trustee since that date, and (b) of which, at any time from January 1, 2003, to June 30, 2007, any affiliate of Mellon Financial Corporation as trustee, or at any time from July 1, 2007, to present, BNY Mellon as trustee, had discretion to invest assets and (c) in its discretion invested money or left any money invested in mutual funds managed by Dreyfus, other than Dreyfus's index funds [] and other than Dreyfus funds that were not included in the trustee's list of favored investments.  Excluded from the class are BNY Mellon and its corporate parent and affiliates; the directors, officers, employees, and agents of any of them; and the United States Government.

*Id*. at ¶ 48.

### B. Standard of Review

"Under Fed.R.Civ.P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).  "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id*.

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need to allege detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and be "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

**C. Discussion**

    i. *Claim for Breach of Fiduciary Duty*

BNY Mellon first contends that Plaintiffs have failed to state a claim for breach of fiduciary duty as a matter of law. *See* BNY Mellon's Br. (ECF No. 75) at 7-14. It is BNY Mellon's position that Plaintiffs' "merely claiming that a fiduciary's selection of an actively-managed fund is imprudent because the fund 'cannot reasonably' be expected to earn a greater return than an index fund is insufficient as a matter of law." *Id*. at 8. In support thereof, BNY Mellon argues that numerous courts that have considered this issue in the context of ERISA

7

claims have reached this conclusion.[4] *Id*. at 8-10.  Furthermore, BNY Mellon contends that "Plaintiffs' theory is also fundamentally implausible."[5] *Id*. at 11.

According to Plaintiffs, the theory of the SAC is that BNY Mellon disregards "the thousands of funds offered by other firms and instead, as a matter of policy, [channels] trust money into Dreyfus active funds if there is a Dreyfus fund in the desired asset category." Pls.' Br. (ECF No. 80) at 9.  It is Plaintiffs' position that such decisions are not "prudent" to the extent there are other available funds that outperform funds not managed by Dreyfus. *Id*.; *see also id*. at 15 (explaining that "[t]he data in the [SAC] documents [] painstakingly detail[s] the large persistent gap between the performance of index funds and the performance of Dreyfus's active funds as a group.").

As set forth *supra*, when a court considers a motion to dismiss pursuant to Rule 12(b)(6), the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his or her claims. *See Scheuer*, 416 U.S. at 236.  Furthermore, it is a defendant's burden to convince this court otherwise. *Gould Elecs.*, 220 F.3d at 178.

---

[4] *See e.g.*, *Velazquez v. Massachusetts Fin. Servs. Co.*, 320 F. Supp. 3d 252, 258 (D. Mass. 2018) (setting forth decisions regarding the prudent-investor rule in the context of ERISA claims and explaining that arguments can be made for both sides of the issue).

[5] In addition, BNY Mellon asserts that a district court in the District of Massachusetts specifically rejected Plaintiffs' theory in Henderson v. BNY Mellon, 1:15-cv-10599-PBS (D. Mass.). See BNY Mellon's Br. (ECF No. 75) at 5-6. According to BNY Mellon, Plaintiffs in this case sought to intervene in the Massachusetts class action asserting the same theory they now argue in the SAC. According to BNY Mellon, the Massachusetts court specifically rejected this theory as a basis for a cause of action.  Plaintiffs dispute such a characterization of the Massachusetts proceedings. See Pls.' Br. (ECF No. 80) at 5-6. In either event, this court suggests that those proceedings do not affect the outcome of this case at this juncture.  BNY Mellon is not arguing that the Massachusetts proceedings subject Plaintiffs to *res judicata* or collateral estoppel.  Accordingly, there is no preclusive effect regarding those proceedings, and this court may consider the issues before it.

This court's review of the SAC reveals that Plaintiffs' argument is not simply that BNY Mellon breached its fiduciary duty by always investing in Dreyfus active funds, or even always investing in active funds for that matter. Instead, a fair reading of the SAC shows that Plaintiffs' argument is that BNY Mellon made legally imprudent decisions by always investing in Dreyfus active funds in an asset category where such funds were available, even where those funds were underperforming. It is this court's position that, at this juncture, Plaintiffs are entitled to conduct discovery into this inquiry. If it is indeed true that BNY Mellon continued to invest trust assets in funds that were underperforming, Plaintiffs may be entitled to relief. *See Robertson v. Cent. Jersey Bank & Tr. Co.*, 47 F.3d 1268, 1279 (3d Cir. 1995) (holding that the due diligence standard governs the question of whether a bank is liable for breach of fiduciary duty). Because Plaintiffs are entitled to discovery on this issue, this court respectfully recommends that BNY Mellon's motion to dismiss for failure to state a claim be denied.

      ii. *Standing*

BNY Mellon next contends that, pursuant to Rule 12(b)(1), "Plaintiffs lack constitutional standing to assert a claim with respect to any mutual funds in which their trusts have not actually invested during the relevant time period." BNY Mellon's Br. (ECF No. 75) at 13.

> Article III of the United States Constitution limits the jurisdiction of federal courts to Cases and Controversies. Courts enforce the case-or-controversy requirement through the several justiciability doctrines that cluster about Article III. These doctrines include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions. Standing is perhaps the most important of these doctrines.
>
> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must suffer an injury-in-fact that is concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third

9

> party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 414-15 (3d Cir. 2013) (internal citations and quotation marks omitted).

Here, BNY Mellon points to one averment in the SAC where Plaintiffs contend that "[i]f all investors in those 80 Dreyfus active funds as a group had instead invested in Dreyfus's own index funds starting on January 1, 2003, then by December 31, 2018, their shares in those index funds would have been worth $4.4 billion more than their shares in the Dreyfus active funds in which they actually invested." BNY Mellon's Br. (ECF No. 75) at 13; *see* SAC (ECF No. 66) at ¶ 33. Specifically, BNY Mellon argues that "Plaintiffs have suffered no injury with respect to the performance of other mutual funds in which their trusts were not invested." *Id*. at 16; *see also* BNY Mellon's Reply (ECF No. 88) at 7 n.6 ("Plaintiffs lack constitutional standing to challenge the prudence of investment decisions that did not affect them.").

Plaintiffs respond that the issue set forth by BNY Mellon is not one of standing, but one of class certification pursuant to Fed. R. Civ. P. 23. *See* Pls.' Br. (ECF No. 80) at 13. It is Plaintiffs' position that so long as the named Plaintiffs have standing to pursue their claim, then "Rule 23 allows named plaintiffs in class actions to assert claims on behalf of absent class members." *Id*. at 14.

In the SAC, Plaintiffs allege that BNY Mellon violated its fiduciary duties as trustee of the trusts, by "channeling substantially all of the money of the" trusts into "Dreyfus active funds that were on its list of favored investments rather than in lowest-cost index funds in the same asset categories…" SAC (ECF No. 66) at ¶¶ 61, 62. Despite the fact that Plaintiffs reference 80 Dreyfus funds in paragraph 33 of the SAC, it does not appear they are asserting claims with

respect to all of those funds. Through discovery, Plaintiffs will have the opportunity to determine exactly which funds are relevant to this matter.[6]

In fact, in its brief, BNY Mellon relies on a case from the Western District of North Carolina. *See* BNY Mellon's Br. (ECF No. 75) at 14, citing *David v. Alphin*, 817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013). In *David*, the district court granted summary judgment for lack of standing for one count of the complaint averring a breach of fiduciary duty specifically against a fund in which it was undisputed that none of the plaintiffs invested.[7] *Id.* at 781. Accordingly, it is appropriate for Plaintiffs to have the opportunity to conduct discovery into this issue to determine which Dreyfus active funds were actually included in the trusts. Thus, this court respectfully recommends that BNY Mellon's motion to dismiss on the basis of standing be denied.

       iii. *Waiver*

Finally, BNY Mellon contends that the trust instrument signed by the Aglae Van Valzah[8] grants "BNY Mellon the authority to select investments 'whether productive or not productive,'" and therefore the Bernards cannot bring any claim against BNY Mellon for investments that lose money. BNY Mellon's Br. (ECF No. 75) at 16. Specifically, BNY Mellon references the following language set forth in the trust document.

> In addition to other such powers as may be granted to them by law, the Trustees (and the survivor of, and any successor to, them) shall have full power in their discretion:

---

[6] There does not appear to be a dispute about whether the trusts were invested in at least some Dreyfus active funds. Plaintiffs clearly have standing with respect to those funds.

[7] Similarly, the other cases cited by BNY Mellon reveal no dispute as to which funds were included in the investments. *See* BNY Mellon's Br. (ECF No. 75) at 15.

[8] Because this language if found only in the Van Valzah trust, this argument affects only the Bernards.

11

> 1. Without obligation to diversify, to retain, sell, exchange or invest in any stocks, bonds, common trust fund or other property, real or personal, (whether productive or unproductive), and whether or not legal for investment by fiduciaries.

Van Valzah Trust (ECF No. 75) at Ex. C p. 4.  It is BNY Mellon's position that while the language of the trust "does not immunize the trustee from liability for all breaches of the duty of prudence," it does waive any claim that BNY Mellon acted imprudently based on investment underperformance, due to use of the words "productive or unproductive." *Id*. at 17.  The Bernards respond that Mrs. Van Valzah did not intend to exonerate the trustee, and even if she did, such exoneration would be void. Pls.' Br. (ECF No. 80) at 15-19.

> In construing the trust agreement, [the New York] Supreme Court [is] required to ascertain the intention of the grantor by looking first to the words used in the trust agreement and effectuating that intent as long as it is not contrary to public policy or established rules of law. Where language is unambiguous and supports a reasonable meaning, it must be accepted as manifesting the grantor's intention; the court is bound and the canons of construction do not come into play.

*Andrews v. Trustco Bank*, 289 A.2d 910, 911-12, 735 N.Y.S.2d 640, 642 (2001).

Here, BNY Mellon reads the adjectives, "productive or unproductive," as modifying all nouns proceeding it – "stocks, bonds, common trust fund, or other property, real or personal." However, one could also read the adjectives, "productive or unproductive," as modifying only "other property, real or personal." In fact, such a reading is more consistent with the utilization of the terms productive and unproductive at the time the trust was written. *See e.g.*, *Megibow v. Comm'r*, 218 F.2d 687, 690 (3d Cir. 1955) (utilizing the terms "productive or unproductive" in reference to real property); *In re Rowland's Estate,* 273 N.Y. 100, 103, 6 N.E.2d 393, 394 (1937).[9]  Based on the foregoing, this court recommends that BNY Mellon's motion to dismiss

---

[9] BNY Mellon relies upon *French v. Wachovia Bank, N.A.*, 722 F.3d 1079 (7th Cir. 2013).  In that case, the circuit court held that the trust language superseded the prudent investor rule due to the following language. "[T]he trustee ... shall have ... the power ... to retain, invest and reinvest in any property without regard to whether the same may be authorized by law, regardless of any risk,

12

the complaint with respect to the Van Valzah trust be denied at this juncture, as the language of the trust document does not provide as a matter of law that the trustee was exonerated to the extent it decided to invest in unproductive mutual funds.

### C. Conclusion

Accordingly, upon review of the pleadings and briefs, it is respectfully recommended that the Defendant's motion to dismiss be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, and the parties shall have until **May 13, 2020** to file objections to this report and recommendation. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing the objections shall have from fourteen days of the date of service of objections to respond thereto.

DATED this 29th day of April, 2020.

s/*Cynthia Reed Eddy*

Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: Counsel of record

---

lack of diversification or unproductivity involved...." *Id*. at 1087. BNY Mellon argues that this language is "essentially identical." As discussed *supra*, this court disagrees with such assertion, when reading the language of the Van Valzah trust document as a whole.

13