**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN BERNARD, WILLIAM BERNARD,     )
PAMELA MARTIN, INDIVIDUALLY     )
AND ON BEHALF OF ALL OTHERS     )
SIMILARLY SITUATED;     )                2:18-CV-00783-RJC
    )
    )
        Plaintiffs,     )
    )
    vs.     )
    )
BNY MELLON, N.A.,     )
    )
        Defendant.     )

## OPINION

Presently pending before the Court are motions challenging the admissibility of four expert reports in this case.  These matters have been fully briefed, were the subject of a hearing and argument, and are ripe for consideration.

## I.  Factual and Procedural Background

Plaintiffs, John Bernard and William Bernard ("the Bernards"), who are the beneficiaries of the Van Valzah trust, and Pamela Martin, who is the beneficiary of the Finkenauer trust,[1] sue BNY Mellon, NA, trustee of the trusts. In their second amended complaint ("SAC") (ECF No. 66), Plaintiffs assert a cause of action against BNY Mellon for breach of fiduciary and statutory duties as trustee. (SAC at ¶¶ 61-62).  According to Plaintiffs, BNY Mellon improperly channeled trust money into poorly performing mutual funds actively managed by its sister company The Dreyfus Corporation ("Dreyfus"), contending that: 1) BNY Mellon's trust officers (called "wealth managers") choose investments for trusts from those on its list of approved investments (which it calls its "solutions matrix"); 2) if Dreyfus offers an active fund or funds in a given category of

---

[1] Martin also received a distribution from the Bertha Finkenauer trust ("Bertha trust").

1

financial assets, then typically BNY Mellon limits the active funds in that category on its solutions matrix to those Dreyfus active funds; and 3) by operation of these steps 1 and 2, BNY Mellon implements its "channeling policy," which violates the Prudent Investor Rule because Dreyfus's active funds as a group have performed so badly for so many years that it is virtually inevitable that its trusts in the aggregate will earn lower returns under its channeling policy than if BNY Mellon were to invest their money otherwise. BNY Mellon breached its duties,[2] according to Plaintiffs, by channeling the assets of the Van Valzah and Finkenauer trusts, which they intended to invest in mutual funds, "in mutual funds in the Dreyfus active funds that were on its list of favored investments rather than in lowest-cost index funds in the same asset categories or in active funds that BNY Mellon investigated and reasonably thought were likely to produce higher returns in the future than index funds in the same asset categories." (SAC at ¶¶ 61-62).

This matter has been referred to Chief Magistrate Judge Cynthia Reed Eddy for pretrial proceedings. 28 U.S.C. § 636. Chief Judge Eddy's Third Joint Amended Case Management Order provided for completion of class certification fact discovery by October 30, 2020, with expert reports in support of class certification to be completed by March 1, 2021, and permitted "early" dispositive motions. (ECF No. 141). Hence, full merits-based discovery has not yet been completed[3] and scheduling of further discovery deadlines in that regard is anticipated.

Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 164) was filed on April 4, 2021. It is now pending before the Court. Defendant argues, referring to Plaintiff's main expert as to damages, that "Dr. Pomerantz' blanket assumption that passive funds were a per se prudent investment alternative is insufficient for Plaintiffs to

---

[2] The Finkenauer trust is governed by Pennsylvania law; the Bernard trust is governed by New York law.
[3] Bifurcation of class and merits discovery had also been proposed in the parties' Rule 26(f) Report. (ECF No. 69 at 5).

survive summary judgment."  (ECF No. 165 at 21, citing cases). In support of the motion for summary judgment, Defendant argues Plaintiffs must show that the passive funds were plausible and available investment alternatives at the time BNY Mellon invested their trusts in Dreyfus active funds, such that BNY Mellon could plausibly have chosen them instead, taking into consideration the terms of the trusts, portfolio of trust investments, and the needs of the beneficiaries and their risk tolerance.   BNY Mellon argues:

> Dr. Pomerantz – by his own admission – did not consider the individual features of any particular mutual fund he used as a comparator, or whether BNY Mellon would have plausibly chose it when making a specific investment decision for Plaintiffs' trusts, but *simply assumed* that a passive fund would *always* be a plausible investment alternative… This is the same methodological error Dr. Pomerantz made in *Banks v. Northern Trust Corporation* where the court rejected his analysis and entered judgment in Northern Trust's favor.

 (ECF No. 165 at 20).

In response, Plaintiffs argue that investing in the lowest-cost passive fund in the same asset category is an accepted popular alternative to active funds and:

> needs only objective and readily available data: the asset category to which Morningstar assigns each Dreyfus active fund; the index that Morningstar uses to measure the performance of funds in that category; the lowest-cost passive fund then available that tracks that index; the performance of that passive fund; and the performance of the Dreyfus fund. To compute damages in this way, plaintiffs asked their expert Dr. Steve Pomerantz, a mathematician, to write a computer program.  For each calendar period, the program compares the performance of each Dreyfus active fund to the performance of the lowest-cost passive fund in the same Morningstar asset category.

 (ECF No. 186 at 16-17).  Plaintiffs characterize Defendant's attacks on Dr. Pomerantz's methodology as raising questions of fact. (ECF No. 186 at 18).

Also pending before the Court, but not addressed substantively herein, is Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 (a) and (b), which was filed on April 5, 2021. (ECF No. 167)  Plaintiffs seek to certify a class as follows:

All beneficiaries of trusts: (a) whose situs is the United States or any State thereof; (b) of which at any time from January 1, 2003, to June 30, 2007, any affiliate of Mellon Financial Corporation was the trustee or, at any time from July 1, 2007, to the present, defendant BNY Mellon, N.A. was or is the trustee; (c) that were open at any time after June 15, 2013; (d) in which the trustee had or has sole discretion to invest the assets of the trust; and (e) in which the trustee invested money in mutual funds actively managed by The Dreyfus Corporation (which funds are listed on Attachment A to the memorandum of law) at any time from January 1, 2003, unless different dates are stated for a particular fund in Attachment A. Excluded from the class are BNY Mellon, N.A. and its corporate parent and affiliates; the directors, officers, employees, and agents of any of them; and the United States Government.

(ECF No. 167 at 1).  Defendant opposes the motion, in part, on the grounds that Plaintiffs' damages model fails to meet the standard required by the holding in *Comcast Corp.v. Behrend*, 569 U.S. 27 (2013), wherein the Court held class certification should not be granted because "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to that theory," requiring plaintiffs therein "to 'tie each theory of antitrust impact' to a calculation of damages."  *Id.* at 35.

As Chief Magistrate Judge Eddy noted previously, "[t]he United States Supreme Court has strongly suggested that a full examination pursuant to the decision in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)], is necessary prior to class certification." (ECF No. 231 at 2), *citing  In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 33 (E.D. Pa. 2019). "[T]he United States Court of Appeals for the Third Circuit has held that a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*." *Id.* (internal quotation marks omitted).

Accordingly, on September 14, 2021, in order to facilitate the deliberative process concerning the pending motions in this case, the undersigned held a hearing pursuant to *Daubert*

*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to consider the following motions filed by the parties in this matter: 1) Plaintiffs' motion to strike the improper legal opinions of Defendant's expert Debra L. Purrington (ECF No. 151); 2) Plaintiffs' motion to strike the opinions of Defendant's expert Bill Post about mutual funds[4] (ECF No. 158); 3) Defendant's motion to exclude Dr. Steve Pomerantz (ECF No. 202); and 4) Defendant's motion to exclude David Kamons (ECF No. 204).

## II. Standard of Review

Plaintiffs acknowledge they must satisfy certain elements in order to obtain class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). *See* Pls.' Br. (ECF No. 168) at 18-19.  Rule 23(a) requires a class meet prerequisites set forth by that rule, referred to as numerosity, commonality, typicality, and adequacy.  In addition, Rule 23(b)(3) provides that a class action may only be maintained where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ. P. 23(b)(3).

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, expert testimony must still meet the requirements of Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[4] As this Court previously pointed out, "the motion to exclude the testimony of Post does not refer to *Daubert*." Order (ECF No. 231) at 3 n. 2. However, "Plaintiffs do claim that his methodology is unreliable, which is an argument consistent with a Daubert motion." *Id.*

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. Rule Evid. 702.

"In deciding whether to admit expert testimony, the trial court serves as a 'gatekeeper' tasked with 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *4 (D. N.J. 2015) (quoting *Daubert*, 509 U.S. at 597). "The Court considers whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, *i.e.*, it must 'fit' the facts of the case." *Id*. "The proponent of the expert testimony must prove these three requirements by a preponderance of the evidence." *Id*.

As to the first requirement, to be "qualified" to render expert testimony under *Daubert*, the proposed expert merely "possess specialized expertise," and this requirement is interpreted "liberally." *Pineda v. Ford Motor Co*., 520 F.3d 237, 244 (3d Cir. 2008) (citation omitted). The expert need not "be the best qualified or ... have the specialization that the court considers most appropriate," *Id.*, and "[i]f the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility," *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 809 (3d Cir. 1997) (citation omitted).

Secondly, in determining whether proposed expert testimony is reliable, the trial court should examine:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of

> error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id*. (quoting *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 742 n. 8 (3d Cir. 1994)).  "Each step of the expert's analysis must be reliable, including 'the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion.'" *Id*. (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012)). "But proponents of expert testimony need not 'prove their case twice--they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable.'" *Id*. (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000)). However, there is "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," and the "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citation omitted).

The final requirement of Rule 702 demands that "expert testimony ... fit the issues in the case." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "In assessing whether an expert's proposed testimony fits, we are asking whether the expert testimony proffered is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Schiff,* 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks, ellipses, and citation omitted). "[T]his is a question of relevance, and Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility if it has the potential for assisting the trier of fact." *Id.* (quotation marks and citations omitted). "The standard is not that high, but is higher than

bare relevance." *Id.* (internal quotation marks and citation omitted). However, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786 (quotation marks and citations omitted).

In addition, "expert testimony that usurps the role of either the jury or the courts is not admissible." *Romero*, 52 F.Supp.3d at 720–24, 2014 WL 4966147, at *3–5; *see also Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion. Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." (citation omitted)).

With these standards in mind, we now address the pending motions.

### A.  Dr. Steve Pomerantz

As noted *supra*, the main dispute to be resolved here, and focus in the *Daubert* proceeding, is Defendant's Motion to Strike the expert report and opinions of Plaintiffs' primary expert, Dr. Steve Pomerantz. (ECF No. 202).  As initially presented, Dr. Pomerantz offered an expert opinion concerning the selection and performance of Dreyfus as a fund manager overall, as well as the performance of Plaintiffs' trusts, including calculations for damages, which were managed by Dreyfus.

At the hearing, Dr. Pomerantz testified regarding his qualifications as a mathematician, and the parties do not dispute that as an area of Dr. Pomerantz's expertise.[5] *See* Transcript of Daubert Hearing held September 14, 2021, ECF No. 242, ("Tr.") at 31-34.  We find Dr. Pomerantz is qualified as an expert in mathematics.[6]

---

[5] In Defendants' closing argument, counsel for Defendants states that mathematics is [Dr. Pomerantz's area of expertise and no one is quarreling with that." Tr. at 271.

[6] In 1981, Dr. Pomerantz earned a Bachelor of Arts in Mathematics from Queens College of the City University of New York. In 1986, he received a Ph.D. in mathematics from the University of California at Berkeley. He has taught courses in statistics, probability, operations research, mathematics, and finance at the undergraduate and graduate levels. He testified the roughly seventy percent of his work is primarily related to litigation in the ERISA area,

Dr. Pomerantz was retained by Plaintiffs' counsel to develop a model to quantify the damage to each trust caused by the way in which BNY Mellon has invested money of that trust in actively managed mutual funds in the Dreyfus complex.  (ECF No. 227-1 at 6).  At the hearing, Plaintiffs repeatedly asserted that Dr. Pomerantz's testimony was related only to his expertise as a mathematician. *See* Tr. at 17-18 ("As the Court will hear in perhaps greater details than I care to, Dr. Pomerantz's expert report on issues related to class certification is almost entirely mathematical…. [Defendant's] real complaint about Dr. Pomerantz has to do with the methodology he used to calculate damages on a class-wide basis which is part of his assignment from [P]laintiffs."); *id*. at 20 ("Dr. Pomerantz is a mathematician.").

Yet it is evident that a good portion of Dr. Pomerantz's proposed testimony goes beyond mathematics and into areas related to selection of investments.    As a mathematician, Dr. Pomerantz made decisions about how he would go about calculating whether Dreyfus funds performed well and what, if any, damages Plaintiffs suffered due to Dreyfus's purportedly poor performance.  Specifically, Dr. Pomerantz testified about the areas where he is offering opinions. "The first would have to do with evaluating the performance of the Dreyfus complex of mutual funds." Tr., at 39.  "The second component would be to analyze the extent to which mutual funds in the trusts are being allocated to Dreyfus funds as opposed to non-Dreyfus funds." *Id*. "Then the third assignment was to develop a methodology that could be applied at a class level to determine if and how much damages were being suffered by the class." *Id*.

Of particular importance to the pending motion, the parties dispute Dr. Pomerantz's decision to calculate class-wide damages by comparing the performance of the Dreyfus active

---

primarily for plaintiffs, and the remaining thirty percent is as a consultant to the Department of Labor on related ERISA matters, specifically investment performance and investment fees.  Tr. at 31. His term as director of quantitative research did not require him to select mutual funds or evaluate them.

funds to the performance of the "least expensive passive instrument." *Id*. at 72.  To calculate damages, Dr. Pomerantz measured the "cumulative difference in performance" of 115 active Dreyfus funds against "passive alternatives in [the] same asset categories." Ex. A at 7-8. Passive alternatives were principally the "cheapest index fund available at each point in time."  *Id.* at 6. According to Dr. Pomerantz, it was his "understanding that in the merits phase of this case, the [P]laintiffs will prove that choosing this option would have always be[en] a prudent course of action for [Defendant] to pursue." *Id.*  Notably, Dr. Pomerantz claims he offered no opinions on prudence, but also opines he disagrees with Defendant's expert, who supports using actively-managed funds as comparators. *Id.* at 72-73, 81-82.  As Plaintiff's counsel admitted, "Pomerantz expresses no opinion on whether any investment was or would be prudent.  The words "prudence" and "prudent" do not appear in his report."  (ECF No. 227 at 4).

It is Defendant's position that Dr. Pomerantz is unqualified to offer expert testimony, and that even if he were qualified, his "damages calculation and related opinions are speculative, ignore key variables, and are simply incorrect." Def.'s Br. (ECF No. 203) at 1.  Specifically, Defendant has posited that Dr. Pomerantz should be precluded from opining on the following topics related to mutual fund performance or selection, as contained in his report (Ex. A):

- The objectives of actively vs. passively managed mutual funds.  See Ex. A at 4.
- The "best" or most "widely accepted way to measure a manager's performance[.]" *Id.* at 6.
- The performance of Dreyfus mutual funds. *Id.* at 7-12.
- The circumstances in which Wealth Managers invested trusts or retained trusts' positions in securities not listed on the Solutions Matrix. *Id*. at 18.2
- The reasons Wealth Managers sell investments from trusts. *Id*. at 19.3
- The performance of Plaintiffs' trusts' investments. *Id*. at 28.
- BNY Mellon's investment decisions for trusts. *Id.* at 32-33.

(ECF No. 203 at 4-5).  Broadly speaking, Defendant argues that in order to prove breach of fiduciary duty, Plaintiff must present evidence to show their proposed alternative investments (i.e.

alternatives to the Dreyfus active funds in which BNY Mellon invested their trusts) had sufficiently similar objectives, fee structures, and asset allocations such that a prudent fiduciary could have selected them at that time, taking into consideration the terms of each trust, the portfolio of trust investments, needs of the beneficiaries, and the like.  Dr. Pomerantz did not consider the individual facets of the mutual funds he used as a comparator, but rather assumed a passive fund would always be a plausible investment alternative, which is in error, according to Defendants.  Defendants further argue, inter alia, that Dr. Pomerantz cannot, and does not, measure the returns to investors of the selected Dreyfus fund versus an unaffiliated fund,  citing  their expert Post's Report at paragraph 80(c) and their other expert Mark Gleason's report at page 27.  Further, Defendant argues Dr. Pomerantz's damages calculations do not fit the case because he attempted to calculate damages to *trusts* invested in Dreyfus funds while Plaintiffs define their class as *beneficiaries*.

In their brief in opposition to the motion to exclude Dr. Pomerantz's testimony, plaintiffs argue that the least expensive passive alternative is a standard comparator for both performance and damages. They posit that the selection of the least expensive passive alternative in the same asset category is recognized by the Restatement (Third) of Trusts § 100, cmt. b(1) (2012)[7], and recent caselaw, as well as sanctioned by financial economists.[8]  Defendant challenges the appropriateness of these sources and characterize the measurement of an active fund against an index fund as being contrary to industry standards.[9]

Defendant is not the first to challenge Dr. Pomerantz's expertise, and some prior challenges have been successful.  These holdings are instructive.  The most recent case cited by Defendant is

---

[7] "[D]amages may be based on 'suitable index mutual funds.'"
[8]  Specifically, Dr. Pomerantz relied upon William F. Sharpe, "The Arithmetic of Active Management," The Financial Analyst's Journal, Vol. 47, No. 1 (1991) at 8 ("[t]he best way to measure a manager's performance is to compare his or her return with that of a comparable passive alternative." (ECF 236-1, JX 9).  Mark Gleason explained that in his opinion, this anticipates a rigorous comparison, review and testing, *in advance* of the period of which performance is measured, as opposed to after the fact.  Tr. at 110-111.
[9] See, e.g. Expert Opinion of Post at paragraph 80.

*Banks v. Northern Tr. Corp*., No. 20-55297, --- F. App'x ---, 2021 WL 3465763, *1 (9th Cir. Aug.

6, 2021), in which the United States Court of Appeals for the Ninth Circuit affirmed the district

court's grant of summary judgment in favor of defendant Northern Trust.   Plaintiffs were

beneficiaries of trusts who sued a financial services company alleging the company breached its

duty of loyalty and prudent investment by investing the trusts in its own proprietary "Fund

Portfolio" which contained affiliated mutual funds rather than seeking superior investments

outside its "financial umbrella," and further alleged that it breached its fiduciary duty by charging

improper and excessive fees.   With respect to the claim that the defendant's funds had higher

expense ratios than purportedly comparable Vanguard funds, the district court held plaintiffs failed

to proffer evidence that comparator funds used by Dr. Pomerantz were adequate comparators to

support a breach of fiduciary duty claim brought by the trust beneficiaries. The district court in

*Banks* noted that Pomerantz "selected seven Vanguard 'institutional class' funds . . . all seven of

those funds required a $5 million minimum investment, which the Lindstrom Trusts could not

meet and, thus, those funds are not comparable . . .", *Banks v. N. Tr. Corp.,* No. 16-9141, 2020

WL 1062144, at *6 (C.D. Cal. Mar. 5, 2020).  It noted Dr. Pomerantz had "simply assumed that

all index funds are interchangeable."  *Id*. at *11.  The Ninth Circuit affirmed.

BNY Mellon cites to *Banks* for the proposition that:

> Plaintiffs have failed to proffer adequate support to show the comparators
> proposed here – passive Vanguard mutual funds – are appropriate to assess the prudence
> of investing in affiliated actively managed funds.  The Ninth Circuit's *Banks* decision
> confirms that an expert's unsupported assurance that the proffered comparator funds are
> appropriate will not withstand summary judgment.

(ECF No. 234 at 2).  In response, Plaintiffs argue that *Banks* is irrelevant because it concerned the

fees of index funds, not the performance of actively managed funds or the use of indices or index

funds as comparators for the performance of active funds.  (ECF No. 235 at 1; ECF No. 186 at 12 n.13).

Defendant also cites to *Chill v. Calamos Advisors LLC*, 417 F. Supp. 3d 208, 248-51 (S.D. N.Y. 2019) wherein mutual fund shareholders sued, on behalf of the fund, the mutual fund's investment advisor, alleging breach of fiduciary duty.  After a bench trial, the Court dismissed the complaint, in part on the basis that the fees that the investment advisor charged to other mutual funds and institutional accounts for which it served as an advisor or sub-advisor were inapt comparators.  Of particular importance to the case at bar, the court found that Dr. Pomerantz's experience in the mutual fund industry is "limited and dated" and "extremely narrow," it found him "wholly unqualified to opine" on mutual funds and the asset management industry, and concluded that "Pomerantz lacks the qualifications or experience necessary to calculate the profitability of a mutual fund in an expert capacity."

In *Wildman v. Am. Century Servs*., LLC, 362 F. Supp. 3d 685, 699 (W.D. Mo. 2019), plaintiff participants in a defined-contribution 401(k) retirement plan filed a putative class action against the employer, plan sponsor, and members of the retirement plan committee that administered the plan, claiming breach of fiduciary duty in violation of the Employee Retirement Income Security Act (ERISA).  After a bench trial, the court found in favor of the defendants.  It held that after hearing the evidence and testimony, when compared to the testimony of another expert, Dr. Pomerantz's four models of damages were not credible and assigned them no weight.[10] The court stated, "[t]he Court finds Dr. Pomerantz's models are the result of speculation and are

---

[10] The court noted that as to Dr. Pomerantz's testimony regarding the propriety of the retirement plan committee's process, said testimony was not credible, noting "[m]any of Dr. Pomerantz's opinions were not tethered to the law, and Dr. Pomerantz, a mathematician, has never had a role with respect to a 401(k) plan at any of his places of employment, has never been hired as a consultant to design a 401(k) plan, has never been hired to draft or review plan documents for a 401(k) plan, and has never been hired to design a watch list procedure for a 401(k) plan.

untethered to the facts of this case." *Id.* at 699. Although it need not have reached the issue of loss given the finding of lack of liability, the Court noted that plaintiffs failed to prove a prima facie case of loss based on Dr. Pomerantz's models.  Citing to *Brotherson v. Putnam Investments,* 907 F.3d 17 (1st Cir. 2018), a case relied upon by Plaintiffs herein, the *Wildman* court stated:

> That is where Plaintiffs' claim of suffering a loss unravels. Unlike the court in *Brotherson v. Putnam Investments,* 907 F.3d 17, 31-34 (1st Cir. 2018), this Court has heard Dr. Pomerantz's testimony and the Defendants' cross-examination, along with the Defendants' expert testimony, all of which were contrary and undermined Dr. Pomerantz's models. After hearing the evidence, the Court finds Dr. Pomerantz's models did not use suitable benchmarks and relied on unfounded assumptions.

362 F.Supp.3d at 710.  Accordingly, the *Wildman* court assigned Dr. Pomerantz's models no weight.

Plaintiffs herein rely on the holding in *Brotherson*, which they argue "rejected an attack on Pomerantz's use of the same comparators, noting that 'there is legal support for the use of index funds and other benchmarks as comparators for loss calculation purposes.'"  (ECF No. 227 at 10). In *Brotherson*, by agreement of the parties therein, the district court held a bench trial during which plaintiffs but not defendants presented their case, and the district court entered judgment on partial findings under Federal Rule of Civil Procedure 52(c).  On all counts, the court found against plaintiffs. The United States Court of Appeals for the First Circuit affirmed in part and vacated in part the district court's holding.  Relevant to the case at bar, the court vacated the finding that plaintiffs therein failed as a *matter of law* to show loss. 907 F.3d at 34.

BNY Mellon challenges the precedential value of the *Brotherson* decision because the court did not address the question of whether Dr. Pomerantz picked the right comparators.  This is central to our analysis here. The appeals court explicitly stated:

> *This is not to say that Pomerantz necessarily picked suitable benchmarks*, or calculated the returns correctly, or focused on the correct time period. Putnam raises some of these issues on appeal, arguing that Pomerantz's comparators were not plausible and

that he improperly focused on damages at a particular point in time. But these are questions of fact. And the district court never reached these questions precisely because it concluded that Pomerantz's approach to establishing that the investment funds selected by Putnam incurred losses was insufficient as a matter of law. Correctly recognizing that its resolution of that issue was not clear cut, the district court explicitly invited de novo review on the question of legal sufficiency, which we have now provided by determining that plaintiffs' evidence was sufficient to support a finding of loss.

*Id.* at 34 (emphasis added).

At the *Daubert* hearing, Plaintiff's counsel conceded that the basis for offering Dr. Pomerantz, at this particular juncture in the case, where merits-based discovery has not yet been undertaken, was much more limited than as initially proposed, and reiterated that his expert report states that he is offering no opinion as to prudence.  This contrasts his deposition testimony, wherein he stated that the lowest cost passive alternative was a prudent comparator.  Tr. at 89.  In response, Defendant makes the point that Dr. Pomerantz needs to explain why the comparators he chose were prudent, because an expert opinion must make assumptions based on facts in the record. Plaintiff's counsel argued that Dr. Pomerantz's "choice of comparators is very well grounded in legal authority including Restatement of Trusts and other decisions . . . This is not the time when we are going to prove that. . . . It isn't the time to proffer an alternative investment theory," tr. at 284, and referred the court to the summary judgment briefing. In response, defense counsel countered "an expert has to make assumptions based on facts in the record." Tr. at 285.

The rule regarding reliability under *Daubert* does not require the party proffering the expert to demonstrate the "correctness" of the expert's opinion. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (concluding that the "evidentiary requirement of reliability" amounts to a lower burden "than the merits standard of correctness"). Rather, the party need only demonstrate "by a preponderance of the evidence" that the expert's opinion bears adequate indicia of reliability. *Id.* Indeed, "[a] judge will often think that an expert has good grounds to hold the opinion ... even

though the judge thinks the opinion otherwise incorrect." *Id.* Therefore, "[t]he focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011). As the Court in *Chill* stated, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Chill v. Calamos Advisors LLC,* No. 15-cv-1014, 2019 WL 5067746, at *25 (S.D.N.Y. Oct. 9, 2019).

Mark Gleason testified that Dr. Pomerantz's damages *calculations* are not in and of themselves in error, in his view. [11] He further explained in his report, however, that "Dr. Pomerantz does not offer any testing or validation of the reasonableness of his selection" and "does not explain why or how passive alternatives are the most suitable or appropriate comparators to be used in a damages model." Gleason Report, Ex. D. to D's Motion at 13-15 (ECF No. 208-4). Dr. Pomerantz did not, in Mr. Gleason's view, perform an adequately rigorous process, or make any effort "to understand if that a comparator actually stacked up against . . . important issues . . . that a Dreyfus investment has in a trust's portfolio." Tr. at 102. Nor has he performed an analysis to determine whether the comparators chosen in his damages model are consistent with the trust instruments of the proposed class, and in fact, he has not reviewed any of the trust instruments in the proposed class. Tr. at 90-91. Moreover, the damages model he has proposed measures damages at the trust level, and not as to the portion of damages suffered by the individual beneficiaries of the trusts.

---

[11] Mr. Gleason explained, "I am not in any way taking issue with his math. I think the math works." Tr. at 100.

Tr. at 92.  Mr. Gleason explained that because portfolio management is the standard in the industry for making investment decisions for trusts, in his opinion, "to analyze a portfolio and try[] to replace a particular investment without exercising some of the rigors of portfolio management, . . . you are not doing a complete job."[12]  Tr. at 102. In addition, Mr. Gleason explained that in his opinion, Dr. Pomerantz also erred in not considering that the net return to the investor is impacted by management fees or rebates, which can vary by state, agreement and jurisdictional requirements.  Tr. at 114-15, 118.   Thus, taking into account such fee adjustments, damages calculations would be reduced.  Tr. at 126. Dr. Pomerantz has not ensured that the comparable fund in his damages calculation had similar characteristics as to profit, risk, restrictions, liquidity and taxability.  Tr. at 131.  And the Morningstar categories do not reflect that certain investments within those categories may have higher risk profiles, profitability and restrictions.  Tr. at 207.

Each of these factors weighs against the reliability of Dr. Pomerantz's opinion as to the appropriate comparator needed to assess class-wide damages. Plaintiffs have not met their burden that his testimony would be helpful to the trier of fact or shown that his testimony is the product of reliable principles and methods, and based on a sufficiently strong factual basis.  Dr. Pomerantz does not have specialized knowledge regarding the area of testimony proposed by Plaintiffs. For testimony to be product of reliable principles and methods, it must be based on sufficient facts and data.  It is evident that Dr. Pomerantz has limited experience in the mutual fund industry.  And the manner in which he chose the cheapest index fund at each point in time as a comparator for measuring damages is contrary to industry standards; "passively managed funds are not

---

[12] Bill Post further explained, "if you're a portfolio manager that is managing a trust account, the idea that you could just replace your active strategy with an index fund is foreign to me. I think that would violate your fiduciary duty as a manager because it doesn't take into account the specific requirements and investment objectives that have to be observed by the portfolio manager."  Tr. at 241-42.  And Dr. Pomerantz did not take into account investment minimums for certain Vanguard comparators.  Tr. at 242. Mr. Post explained that broadly, in down market cycles, active managers outperform indices in a variety of market cycles, particularly down market cycles. Tr. 157, 187-88, 191.

meaningful benchmarks for actively managed funds given their essential differences." *Davis v. Salesforce, Inc.*, No. 20-cv-01753, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021); *see also Brown v. Daikin Am., Inc.*, No. 18-cv-11091, 2021 WL 1758898, at *7 (S.D.N.Y. May 4, 2021); Tr. at 168. Plaintiffs have not shown to a sufficient degree that the comparator funds used by Dr. Pomerantz were adequate comparators to support a breach of fiduciary duty claim brought by the trust beneficiaries.

Based on the testimony at the hearing, his testimony and opinion are contrary to industry standards. The proposed damages calculation set forth in Dr. Pomerantz's report, in our estimation, are not subject to a well-settled, common methodology that can be applied to the class as a whole and thus is not helpful to the trier of fact or relevant to the dispute at issue: whether Plaintiffs have established by a preponderance of the evidence for purposes of certification that damages will be susceptible to class-wide measurement.[13]

We are also concerned that his opinion goes to the ultimate issue of prudence. For example, he states:

> Within each of [Morningstar's] categories there are both active and usually passive alternatives. For the purposes of my analysis, I have created a database of passive alternatives within each category and selected the cheapest index fund available at each point in time. *This method provides the best – and a widely accepted – way to measure a manager's performance;* that is, by comparing the returns to those of a comparable passive alternative."

(ECF No. 227-1 at 6) (emphasis added). This is not the assessment of a mathematician, and Dr. Pomerantz's qualifications do not reach this subject.

---

[13] Although "[w]eighing conflicting expert testimony at the certification stage ... may be integral to the rigorous analysis Rule 23 demands," *Hydrogen Peroxide,* 552 F.3d at 323, "a court should not address merits-related issues beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof," *Harnish v. Widener Univ. Sch. of L.,* 833 F.3d 298, 305 (3d Cir. 2016) (quotation marks and citation omitted). At the merits stage of this litigation, the parties' proposed experts may  go head-to-head regarding the viability of Plaintiffs' damages model. But it is not necessary to address it here. *See, e.g., Amgen*, 568 U.S. at 466, 133 S.Ct. 1184 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage").

Accordingly, based upon the parties' agreement that Dr. Pomerantz is a qualified mathematician, and Plaintiffs' position that Dr. Pomerantz's expertise would be limited to that area, this Court grants in part and denies in part Defendants' motion to exclude Dr. Pomerantz. Defendant's motion is granted to the extent Dr. Pomerantz's report and/or testimony go beyond his mathematical area of expertise and is denied to the extent it is consistent with that area.

### B.  David Kamons

Defendant moved to strike the expert report and testimony of Plaintiffs' expert David Kamons.  (ECF No. 204).   Kamons testified that he was offering "four primary opinions." TR., 9/14/2021, at 214.  "First, that [Defendant] has a firm-wide policy and practice of channeling trust money into Dreyfus active mutual funds." Id.  "Second, the policy applies to all trusts regardless of their individual characteristics." *Id.*  "Third, whether the policy is prudent does not vary by trust." Id. "Fourth, the lay beneficiary would not know if the policy was imprudent." *Id.* at 214-15.

According to Defendant, his testimony is "inadmissible because it purports to summarize the contents of all Solutions Matrices, documents that speak for themselves and that he himself has not reviewed; it parrots data and opinions offered by Plaintiffs' other expert [Dr. Pomerantz], without validating or expanding on either; and it opines on BNY Mellon's ultimate liability." (ECF No. 205 at 2).  In summary, Defendant contends that Kamons's opinion "regarding the make-up of the Solutions Matrix consists simply of a statement regarding what the Matrix itself shows;" thus, it is not appropriate for an expert opinion. Def.'s Br. (ECF No. 205), at 2.  Furthermore, Defendant argues that Kamons's report and testimony merely summarizes the opinions of Dr.

Pomerantz.[14] *Id.* at 3.   BNY Mellon argues "[s]hould the Court grant [the motion to exclude Pomerantz's testimony], Mr. Kamons should be precluded from offering these "opinions" as his own. *See CCM Rochester, Inc. v. Federated Inv'rs*, No. 14-cv-3600, 2016 WL 11617452, at *6-7 (S.D.N.Y. Aug. 31, 2006) (excluding testimony of expert who relied on Pomerantz's data and opinion because Pomerantz's analysis was "fundamentally flawed" and the opinions thus "rise and fall together").   BNY Mellon characterizes his opinions as speculative and unreliable.  Fed. R. Evid. 702(b).

The Court denies BNY Mellon's motion to exclude to the extent it objects to Kamon's reliance on the work of another expert, Dr. Pomerantz, in forming his own opinion.  An expert is permitted to do so, unless he is reciting the other expert's opinion as his or her own.  *See Carnegie Mellon Univ. v. Marvell Technology Group, Ltd.*, 986 F. Supp.2d 574, 656 (W.D. Pa. 2013).

Here, Defendant does not challenge Kamons's qualifications, or even his methodology.[15] Although this is the first time he has offered an expert opinion, based on the record before us it appears he is qualified to testify as an expert.[16]

It is Defendant's position that the testimony Kamons may offer at trial is not the type that is appropriate for expert testimony.   For example, he offers an opinion about the alleged exclusive use of Dreyfus funds, BNY Mellon's ultimate liability, and the affirmative defenses.   These are

---

[14] In his report, Mr. Kamons opines "the actively managed funds listed on BNY Mellon's Solutions Matrices have consisted almost entirely of Dreyfus funds since at least May 2007[.] Ex. A (Kamons Rept.) at 6. He further opines "when BNY Mellon invested ... in active funds, it invested almost entirely in funds that were on the Solutions Matrices (which were almost entirely Dreyfus funds)" and that exceptions only occurred when assets were "transferred in kind or specifically requested by a beneficiary or a co-trustee." *Id.* at 7, 10.

[15] *See also* TR., 9/14/2021, at 228-238 (Defendant's cross examination of Kamons).

[16] He has a bachelors degree in electrical engineering from Carnegie Mellon University, a master's degree in electrical engineering from Johns Hopkins University and an M.B.A. from Harvard University Graduate School of Business Administration.  He holds a Certified Financial Analyst Charter, has 45 years of experience in finance, including 27 years experience at managing investments and trusts for Northern Trust, which manages trusts and investments for high net worth individuals, foundations, endowments and other institutions.  Tr. 210-11.  He served as a senior vice president and senior portfolio manager, and managed roughly $200 million in trust money., which was invested in stocks, bonds, mutual funds and private placements.  Tr. at 212.  He later served as senior vice president and senior investment strategist at Wells Fargo and managed roughly $250 million in trust money there.

objections that are more appropriately raised at trial during Kamons's testimony.  His opinion may be helpful to the trier of fact and appears to be based on reliable methodology.

Accordingly, this Court denies Defendant's Motion to Exclude Kamons without prejudice, subject to any further objections propounded in a motion in limine.

### C.  Bill Post

Defendant has utilized expert Bill Post in its opposition to Plaintiffs' motion for class certification. (ECF No. 183-30).   It is Plaintiffs' position that "Post's methodology is not reliable because he is not diligent, distorts what his sources say, makes broad statements with no sources to support them, speculates freely, and refuses to acknowledge or correct his errors."[17] Pls.' Br. (ECF No. 159) at 1.   Plaintiff's request the Court strike certain paragraphs of his report. In response, Defendant contends that Post is qualified and that his expert opinions are supported by evidence. (ECF No. 174).

On cross-examination, Plaintiffs did not challenge Post's qualifications to offer his opinions, but rather, focused primarily on Post's rationale for coming to conclusions, particularly with regard to the performance of Dreyfus funds that were in opposition to Plaintiffs' expert, Dr. Pomerantz.  Tr., 9/14/2021, at 170-196.   According to Post, he did not test Dr. Pomerantz's conclusions because he found Dr. Pomerantz's "use of the comparators or idea [that a fund manager] can select passive strategies to replace active strategies as something that [he is] not familiar that anybody in the management of assets, trust assets or academia would support the structure of [Dr. Pomerantz's] argument." Tr. at 160.

---

[17] As this Court previously pointed out, "the motion to exclude the testimony of Post does not refer to *Daubert*." Order (ECF No. 231) at 3 n. 2. However, "Plaintiffs do claim that his methodology is unreliable, which is an argument consistent with a Daubert motion." *Id*.

Throughout cross-examination, counsel for Plaintiffs questioned a number of Post's conclusions and pointed to evidence as to why his conclusion may be incorrect or overstated. However, in the Third Circuit, "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). It is not appropriate for this Court to exclude Post's testimony at this juncture, where he is qualified[18] to offer the opinions he does, and Plaintiffs will have the opportunity to test them at trial. Accordingly, Plaintiffs' motion to exclude Post is denied.

### D. Debra Purrington

As this Court noted previously (ECF No. 231), Defendant utilized expert Debra Purrington in its opposition to Plaintiffs' motion for class certification.[19] (ECF No. 183-31). Defendant utilized Purrington's opinions throughout its brief. Defendant also offered Purrington in support of several arguments, including the fact that Plaintiffs' motion for class certification should be denied because individual issues related to each trust will predominate. *See* Fed. Rule Civil Pro. 23 (b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members"). *See* Def.'s Br. (ECF No. 183) at 23-24.

In their brief in support of the motion to strike, Plaintiffs contended that Purrington's report primarily interprets the Uniform Prudent Investor Act, and also argued that "[i]nterpretation of the

---

[18] At the hearing, Post testified he attended the University of Virginia, received a juris doctorate from the University of San Francisco, and holds a membership in the Charter Financial Institute. He began his career as a trusts and estates attorney, then moved into the area of investments side, where he has been active for "almost 30 years." Tr.., 9/14/2021, at 140. He is currently employed ats a senior managing director at "FTI Consulting, a global investment firm where [he is] now doing exclusively expert witness testimony on investment management service." *Id.* at 140, 143. He served as a portfolio manager at Capital Research Company, chief investment officer president of the wealth management business at Franklin Templeton, a consultant for Norther Trust in the trust area, and president of institutional investment management company at global consulting firm Alvarez & Marshal. Tr. at 142-143. He estimates he has served as an expert witness in nearly two dozen matters involving the investment process. Tr. at 144.

[19] This Court recognized that the motion to exclude Purrington as an expert is not a *Daubert* motion; however, this Court, in its discretion, elected to consider the motion during the *Daubert* hearing "because Defendant may need to present the testimony … as part of the *Daubert* hearing." Order (ECF No. 231).

governing law is not a proper subject of expert reports or testimony." Pls.' Br. (ECF No. 152) at 1.  In response, Defendant contended that the Rules of Evidence permit an expert to "touch upon legal issues so long as that testimony is helpful to the trier of fact and otherwise meets evidentiary requirements." Def.'s Br. (ECF No. 163) at 1.

At the hearing, Purrington testified about her qualifications for being an expert on trusts and clarified that she has not offered any opinions regarding the ultimate issues in this case with regard to whether the Court should certify the class or as to whether Defendant breached a fiduciary duty owed to Plaintiffs.  She is qualified to testify on the appropriate standards and practices of corporate trustees, and, accordingly, her testimony will not be excluded *in toto*.  The Court agrees with Defendant's position that Purrington is offering helpful explanations about the role of trustees and how trusts actually work.  Plaintiffs contended that "the question whether the specific paragraphs of her report are or are not legal opinions is one of law." TR., 9/14/2021, (ECF No. 242) at 255.  However, when considering the motion for class certification the Court will be able discern which portions of her opinion are appropriate.  At the trial phase the Court may need to give proper instruction to the jury, and possibly may need to exclude particular portions of her report which may or  may not opine on the ultimate issue in this case, however, the motion is denied without prejudice at this time.  To the extent Defendant offers Purrington's testimony and expert report at trial, Plaintiffs may make specific objections at that time.

### E. Conclusion

As discussed *supra*, this Court orders the following:

1. Plaintiffs' motion to strike the improper legal opinions of Defendant's expert Debra L. Purrington (ECF No. 151) is DENIED without prejudice;

2. Plaintiffs' motion to strike the opinions of Defendant's expert Bill Post about mutual funds (ECF No. 158) is DENIED;

3.  Defendant's motion to exclude Dr. Steve Pomerantz (ECF No. 202) is GRANTED in part and DENIED in part as outlined *supra*; and

4.  Defendant's motion to exclude David Kamons (ECF No. 204) is DENIED without prejudice.

DATED:  February 7, 2022

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

Cc/ecf: All counsel of record