IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| JOHN BERNARD, WILLIAM BERNARD, PAMELA MARTIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>Plaintiffs,<br><br>vs.<br><br>BNY MELLON, N.A.,<br><br>Defendant. | 2:18-CV-00783-RJC |

**MEMORANDUM OPINION**

This action was initiated in this court on June 15, 2018, by Plaintiffs, John Bernard and William Bernard ("the Bernards"), who are the beneficiaries of the Van Valzah trust, against BNY Mellon, NA, trustee of the Van Valzah trust. In their second amended complaint ("SAC") (ECF No. 66), Plaintiffs[1] assert a cause of action against BNY Mellon for breach of fiduciary and statutory duties as trustee. SAC (ECF No. 66) at ¶¶ 61-62. This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1332.[2] *Id.* at ¶ 6.

Presently before this Court is a motion by BNY Mellon for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. (ECF No. 164). For the reasons that follow, BNY

---

[1] The Bernards filed their original complaint on behalf of themselves and others similarly situated. In the SAC, the Bernards added an additional individual plaintiff, Pamela Martin, as beneficiary of the Elmer Finkenauer trust.

[2] Specifically, this court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A). SAC (ECF No. 66) at ¶ 6. The matter in controversy exceeds $5,000,000, and this is a class action in which members of the class of Plaintiffs are citizens of states other than Pennsylvania, the Commonwealth of which BNY Mellon is a citizen, and number more than 100. *Id.*

1

Mellon's motion is denied in part, and the Court will defer action in part pending supplemental briefing.

I. **Procedural History and Factual Allegations**

The facts relevant to this motion are as follows. The Van Valzah trust was established by agreement dated November 17, 1954, between Aglae Van Valzah, an ancestor of the Bernards, as Grantor, and The Bank of New York as Trustee. BNY Mellon has been Trustee since at least 2007. The trust is governed by the law of New York. The Bernards are beneficiaries of the Van Valzah trust. *See* BNY Mellon's CSF (ECF No. 177) at ¶¶ 1-13; Pls.' CSF (ECF No. 187) at ¶¶ 1-13.

The Finkenauer trust was established by agreement on October 5, 1962, by Pamela Martin's grandfather, Elmer Robert Finkenauer, as Grantor, and the Girard Trust Corn Exchange Bank as Trustee. The Finkenauer trust's assets have been in trust continuously with the Girard Trust Corn Exchange Bank and its corporate successors, now BNY Mellon, since that time. *Id*. The Finkenauer trust is governed by the law of Pennsylvania. Plaintiff Pamela Martin is a beneficiary of the Elmer Finkenauer trust. *See* BNY Mellon's CSF (ECF No. 177) at ¶¶ 14-21; Pls.' CSF (ECF No. 187) at ¶¶ 14-21.

During the relevant periods of time, up until 2019, at least some assets of both trusts were invested in Dreyfus active mutual funds.[3] *See* BNY Mellon's CSF (ECF No. 177) at ¶¶ 22, 26; Pls.' CSF (ECF No. 187) at ¶¶ 22, 26. "Plaintiffs contend that BNY Mellon breached its fiduciary duty by 'channeling' trust assets into 115 specific actively-managed Dreyfus funds." BNY Mellon's CSF (ECF No. 177) at ¶ 33. It is Plaintiffs' contention that

> [w]hen BNY Mellon as trustee decides to invest the money of trusts in mutual funds, it follows a consistent policy of channeling most of that money into active funds of its sister company Dreyfus. Dreyfus has long been one of the worst active fund managers in the country…. [T]he focus of the [SAC] is BNY Mellon's

---

[3] Dreyfus is a corporate affiliate of BNY Mellon. SAC (ECF No. 66) at ¶ 1.

2

>consistent policy of channeling trust money to Dreyfus active funds and the nearly inevitable negative effect of that channeling policy on BNY Mellon's trusts in the aggregate, not on any specific investments.

Pls.' CSF (ECF No. 187) at ¶ 33.

The Bernards filed their initial complaint on June 15, 2018 (ECF No. 1). By agreement, on September 11, 2019, Plaintiffs filed the SAC. (ECF Nos. 64-66). On October 15, 2019, BNY Mellon filed its third motion to dismiss and brief in support thereof. (ECF Nos. 74, 75). On April 29, 2020, Chief Magistrate Judge Cynthia Reed Eddy issued a report and recommendation recommending that the motion to dismiss be denied. (ECF No. 106). This Court adopted that report and recommendation on June 4, 2020. (ECF No. 109). BNY Mellon filed an answer to the SAC on July 9, 2020. (ECF No. 114).

On September 29, 2020, BNY Mellon filed a motion for judgment on the pleadings and brief in support thereof. (ECF Nos. 129, 130). Their motion raised one issue; namely, that the Plaintiffs' claims are barred pursuant to the statute of limitations. On November 30, 2020, Chief Magistrate Judge Eddy recommended that BNY Mellon's motion for judgment on the pleadings be denied as there are issues of fact related to when beneficiaries knew or should have known about their breach of fiduciary duty claim. (EF No. 143). This Court entered an order adopting that Report and Recommendation on March 31, 2021. (ECF No. 156).

Meanwhile, class certification discovery proceeded, and on April 5, 2021, BNY Mellon elected to file an early dispositive motion.[4] Specifically, BNY Mellon moved for summary judgment, and filed a brief in support thereof and concise statement of material facts ("CSF"), against Plaintiff on four bases: (1) Plaintiffs have suffered no damages; (2) Plaintiffs' claims are

---

[4] Pursuant to the case management order governing this case, the parties were permitted to file early dispositive motions by April 5, 2021. CMO (ECF No. 141) at ¶ 4.

barred by the statute of limitations; (3) Plaintiffs lack standing to pursue certain claims; and (4) Plaintiff Martin signed a release for one of the trusts. (ECF Nos. 164-166). Plaintiffs filed a responsive brief, CSF, and Appendix on May 14, 2021. (ECF Nos. 186-188). BNY Mellon filed a reply on June 11, 2021. (ECF Nos. 218-219). This matter is now ripe for disposition.

**II.     Standard of Review**

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F.

App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

**III.   Discussion**

      *A.   Damages*

BNY Mellon first contends that it is entitled to summary judgment because "Plaintiffs have suffered no damages from the alleged conduct about which they complain." BNY Mellon's Br. (ECF No. 165) at 6-7. According to BNY Mellon, "the undisputed evidence is that Plaintiffs did ***not*** suffer losses." *Id*. at 7 (emphasis in original). Thus, BNY Mellon contends that the remedy of a surcharge, which is the remedy available for a breach of fiduciary duty claim, is not available to Plaintiffs. *Id*. Plaintiffs respond that contrary to BNY Mellon's position, a measure of damages for breach of trust does include lost profits from imprudent investment decisions. Pls.' Br. (ECF No. 186) at 8-9.

> The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal. The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate. Surcharge is the remedy when a trustee fails to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care.
>
> The court must find the following before ordering a surcharge: (1) that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to

5

>the trust. Where there is no breach of fiduciary duty, there is no basis for a surcharge.

*In re Est. of Warden*, 2 A.3d 565, 573 (Pa. Super. 2010) (internal citations and quotation marks omitted).

"[A] trustee cannot be surcharged for a breach of the relevant duty of care unless the breach caused an actual loss to the trust. However, that loss may be in the form of lost interest or unrealized capital gain as well as direct capital loss." *In re Scheidmantel*, 868 A.2d 464, 493 (Pa. Super. 2005) (internal citation omitted).  "The trial court may grant a surcharge for the purpose of providing the beneficiaries with the unrealized gain to the value of principal assets of a trust that was lost because of a trustee's failure to fulfill its duty of care." *Id*. "Furthermore, [l]ost income is just as much unrealized gain as unrealized principal growth. *See* Restatement (Second) of Trusts § 205, comment a (explaining alternative remedies available to trust beneficiaries)." *Id*.

Based on the foregoing, if a court finds that a trustee breached his or her fiduciary duty, then the remedy may include unrealized gain that could have been had if no breach had occurred. Accordingly, BNY Mellon's argument that Plaintiffs cannot recover where trusts appreciated in value over time does not entitle it to relief.  If it is found that BNY Mellon breached its fiduciary duty as trustee, then there must be a remedy available to Plaintiffs.  Thus, this Court denies BNY Mellon's motion for summary judgment on this basis.

BNY Mellon next contends that even if Plaintiffs were asserting a viable theory for damages, they have not demonstrated that their expert's methodology is sound.  BNY Mellon contends that to succeed on the breach of fiduciary duty claim, "Plaintiffs must show that these passive funds were plausible and available investment alternatives at the time BNY Mellon invested their trusts in Dreyfus active funds, such that BNY Mellon could plausibly have chosen them instead. BNY Mellon's Br. (ECF No. 165) at 10.  According to BNY Mellon, the expert

report submitted by their expert, Dr. Steven Pomerantz, did not meet this threshold. *Id.* BNY Mellon asserts that Dr. Pomerantz "made no attempt to demonstrate or discuss why index funds would have been plausible alternative investments to each of the 34 Dreyfus active funds in which Plaintiffs' trusts invested—let alone the 115 funds that Plaintiffs challenge—at the time of investment." *Id*. at 11. To counter this point, Plaintiffs rely on the testimony of both Dr. Pomerantz and another expert, David Kamons. Pls.' Br. (ECF No. 186) at 12-13.

On February 7, 2022, the Court entered a Memorandum order granting in part and denying in part BNY Mellon's motion to exclude the testimony of Dr. Pomerantz. (ECF No. 249). In response, Plaintiffs have filed for leave to file additional memoranda, which this Court has granted, that potentially impacts this issue. Accordingly, out of an abundance of caution, this Court will defer ruling on the motion for summary judgment as it relates to Dr. Pomerantz or damages until it considers that briefing.

### B. *Statute of Limitations*

BNY Mellon next contends that Plaintiffs' claims are time-barred pursuant to the two-year statute of limitations applicable to torts codified at 42 Pa.C.S. § 5524(7).[5] BNY Mellon's Br. (ECF No. 165) at 14. Specifically, BNY Mellon asserts that "[b]ecause Plaintiffs did not bring their claims within two years of their accrual – i.e., by 2005 as to Martin and 2009 as to the Bernards – and because Pennsylvania's continuing violation doctrine would not revive their

---

[5] This Court has already held "the general rule that a suit filed in Pennsylvania utilizes the Pennsylvania statute of limitations applies to both trusts at issue in this case." Report and Recommendation (ECF No. 143) at 8, adopted by Memorandum Order (ECF No. 156). Despite BNY Mellon's protestations to the contrary, *see* BNY Mellon's Br. (ECF No. 165) at 16 n.11, that is the law of the case, and this Court declines to reconsider it at this juncture. *See Arizona v. California*, 460 U.S. 605, 618 (U.S. 1983) (defining the law of the case as a doctrine that posits "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

claims, the claims are barred under Pennsylvania law." BNY Mellon's Br. (ECF No. 165) at 15-16. Plaintiffs respond that BNY Mellon is utilizing the incorrect statute of limitations, and contend that the applicable statute of limitations is 20 Pa.C.S. § 7785, which governs trusts. Plaintiffs further assert that even if this Court were to use the two-year statute of limitations as suggested by BNY Mellon, Plaintiffs claims are not time-barred. Pls.'Br. (ECF No. 86) at 15-26. BNY Mellon replies that section 7785 "acts as a statute of repose rather than of limitations." BNY Mellon's Reply (ECF No. 218) at 7. Alternatively, BNY Mellon contends that this case is barred by the doctrine of laches. *Id*. at 9-10.

The first task of this Court is to consider what statute of limitations may be applicable in this matter. In 2006, Pennsylvania adopted the Uniform Trust Code ("UTC"). "[T]he primary purpose of adopting the UTC was to clarify the law surrounding trusts, and to make Pennsylvania probate law more uniform with our sister states, while simultaneously preserving our vast body of common law precedent...." *In re Estate of Stephano*, 981 A.2d 138, 143 (Pa. 2009) (Baer, J., concurring). The UTC provides that "this chapter applies to express trusts, charitable and noncharitable, and trusts created pursuant to a statute, judgment or decree that requires the trust to be administered in the manner of an express trust." 20 Pa.C.S. § 7702. There is no dispute that the trusts at issue in this case are express trusts; thus, it is clear that provisions of the Uniform Trust Code can apply at this juncture.

Turning now to the statute governing the limitations of action against a trustee, that statute provides the following, in relevant part.

> **(a) Imposed by trustee's written reports.--**
>
>> (1) A beneficiary is barred from challenging a transaction or asserting a claim against a trustee for breach of trust if:

(i) the trustee provided the beneficiary at least annually with periodic written financial reports concerning the trust;

(ii) the transaction was disclosed in a report to which subparagraph (i) refers or such report provided sufficient information so that the beneficiary knew or should have known of the potential claim or should have inquired into its existence;

(iii) in the 30 months after a report to which subparagraph (ii) refers was sent by the trustee to the beneficiary, the beneficiary did not notify the trustee in writing that the beneficiary challenges the transaction or asserts a claim and provides in writing the basis for that challenge or assertion; and

(iv) all reports were accompanied by a conspicuous written statement describing the effect of this paragraph.

(2) A claim not barred by paragraph (1) may nevertheless be barred by subsection (b).

\*\*\*

(**b) Five-year absolute bar.--**If not previously barred by subsection (a) or section 7798 (relating to failure to present claim at audit):

(1) Except as provided in paragraph (1.1), (2) or (3), a claim by a beneficiary against a trustee, including a claim preserved by the beneficiary notifying the trustee in the manner described in subsection (a), shall be barred five years after the first to occur of the following events:

(i) the date after the removal, resignation or death of the trustee on which the beneficiary was given the notice required by section 7780.3(g) (relating to duty to inform and report);

(ii) the termination of the beneficiary's interest in the trust; or

(iii) the termination of the trust.

(1.1) A beneficiary who has challenged a transaction or asserted a claim as provided in subsection (a)(1)(iii) may not challenge the transaction or assert the claim against the trustee in a court or an arbitration proceeding commenced more than five years after the date the trustee sent the beneficiary the report described in subsection (a)(1)(i) and (ii).

(2) Except as set forth in paragraph (3), if the first to occur of the events set forth in paragraph (1) occurred before November 6, 2006, a claim described in paragraph (1) shall be barred five years after November 6, 2006.

9

>    (3) A claim described in paragraph (1) or (1.1) is not barred if, prior to the respective date set forth in either paragraph (1) or (2), the trustee has filed an account with the court or the beneficiary has petitioned the court to compel the trustee to file an account.

20 Pa.C.S. § 7785.

The Comment to this statute points out that "[t]his section imposes two new time limitations on actions for breach of trust, one available to the trustee by taking steps the section specifies and the other absolute." *Id.* (Comment). The Comment further provides that subsection (a) "is an effort to codify in part the laches doctrine by enabling a trustee who has furnished a series of annual reports to the beneficiaries to foreclose actions by those beneficiaries for a breach of trust after a time certain."[6] *Id.*

In other words, a trustee may only utilize this advantageous time bar once it has complied with the provisions of subsection (a). In this case, viewing the facts in the light most favorable to Plaintiffs, Plaintiffs were provided notice in compliance with subsection (a) in September 2016. Pls.' CSF (ECF No. 187) at ¶ 110.[7] This matter was filed in June 2018, within the 30-month period. *See* Complaint (ECF No. 1). Accordingly, this Court concludes that under the facts of this case, BNY Mellon cannot utilize 20 Pa.C.S. § 7785(a) to bar this action.

However, this Court's analysis does not end there, as it is not dispositive of the circumstances alleged by Plaintiffs. Plaintiffs are asserting an ongoing harm that began in 2003 for the Finkenauer trust and in 2007 for the Van Valzah trust. BNY Mellon contends that Plaintiffs

---

[6] Subsection (b) provides an alternative, in the nature of a statute of repose, where a beneficiary is barred from filing a lawsuit against a trustee more than five years after certain triggering circumstances. Neither Plaintiffs nor BNY Mellon assert that this subsection applies in this case.

[7] BNY Mellon concedes that this notice was included in the Finkenauer trust statement for the period ending September 30, 2016, and that this statement would have been included as of that date for each trust account for which BNY Mellon was trustee at that time. BNY Mellon's CSF (ECF No. 219) at ¶ 110.

knew or should have known about this purported harm, and it is too late to bring these claims pursuant to both the statute of limitations in effect at that time and the doctrine of laches.[8] BNY Mellon's Reply Br. (ECF No. 218) at 9-10. Specifically, BNY Mellon contends that despite having unfettered access since 2003 to the only two purported facts underlying their claims—their trusts were invested in Dreyfus funds and Dreyfus funds were not performing to their standards—Plaintiffs waited fifteen years to bring their claims." BNY Mellon's Br. (ECF No. 165) at 19. BNY Mellon asserts that this demonstrates a "lack of diligence." *Id*.

It is BNY Mellon's position that the fact that it provided statements to Plaintiffs beginning in 2003,[9] which showed the performance of the active Dreyfus funds, and these statements are "'imputed to the investor,'[10] Plaintiffs claims are time-barred under Pennsylvania law." BNY

---

[8] In its opening brief, BNY Mellon sets forth the following argument as to why Plaintiffs' claims are barred by the statute of limitations: "Despite having unfettered access since 2003 to the only two purported facts underlying their claims—their trusts were invested in Dreyfus funds and Dreyfus funds were not performing to their standards—Plaintiffs waited fifteen years to bring their claims." BNY Mellon's Br. (ECF No. 165) at 19. BNY Mellon asserts that this demonstrates a "lack of diligence." *Id*. In other words, BNY Mellon appears to be asserting that Plaintiffs should have known in 2003 and 2007, with the very first statement received, of these allegations. Thus, BNY Mellon contends that this lawsuits regarding these trusts should have been filed by 2005 and 2009.

[9] BNY Mellon has sent the Plaintiffs account statements for the trusts since at least 2003. BNY Mellon's CSF (ECF No. 177) at ¶¶ 41, 46; Pls.' CSF (ECF No. 187) at ¶¶ 41, 46. These account statements included an itemized list of each investment held by the trust at that time. *Id*. at ¶¶ 42, 47; *Id*. at ¶¶ 42, 47. The filing of this lawsuit in 2018 was the first time Plaintiffs objected to or raised issues with the trust. *Id*. at ¶¶ 45, 49; *Id*. at ¶¶ 45, 49.

[10] BNY Mellon cites *Travis v. The Vanguard Grp., Inc.*, 2008 WL 2073372 (E.D. Pa. May 15, 2008) in support of this contention. The District Court pointed out that "numerous courts have held that a reasonable investor is not free to ignore information contained in account statements, and therefore the knowledge that would be acquired through them is imputed to the investor. It is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." *Id*. at *3 (internal quotation marks omitted). However, knowledge is not the standard for a breach of fiduciary claim. "For breach of fiduciary duty claims the statute of limitations period generally begins to run 'when [a] trustee openly and unequivocally violates his duties.' *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir.2005)." *Langman v. Keystone Nazareth Bank & Tr. Co.*, 502 F. App'x 220, 223 (3d Cir. 2012). Merely being on

11

Mellon's Reply Br. (ECF No. 218) at 6. In other words, it appears that BNY Mellon is arguing that upon receiving the very first statement showing investments in Dreyfus active funds, a reasonable investor should have recognized that, as Plaintiffs set forth in the SAC, BNY Mellon was "channeling substantially all the money of the [trusts] that it decided to invest in mutual funds in the Dreyfus active funds that were on its list of favored investments rather than in lowest-cost index funds in the same asset categories or in active funds that BNY Mellon investigated and reasonably thought were likely to produce higher returns in the future than index funds in the same asset categories." SAC (ECF No. 66) at ¶¶ 61, 62.

That is a lot of information for a reasonable investor to glean from the very first statement received. Indeed, none of the statements show the challenged "channeling policy;" thus, even if Pennsylvania's two-year statute of limitations in effect prior to 2006 applies in this case, a reasonable beneficiary may or may not have known of the alleged breach of statutory and/or fiduciary duty at that juncture or any time prior to 2016. Thus, even if that statute of limitations applies, this Court would not grant summary judgment on that basis.

In fact, BNY Mellon's argument is more akin to an argument that this claim should be barred by the doctrine of laches. "Laches, similar to a statute of limitations, may bar a party from seeking equitable relief after the lapse of a certain period, usually six years." *In re Est. of Warden*, 2 A.3d 565, 579 (Pa. Super. 2010). "Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another." *Id*. "[I]n order to prevail on an assertion of laches, [a trustee] must establish: a) a delay arising from

---

notice of investment decisions may not be enough, in and of itself, to put an investor on notice of a breach of fiduciary duty. BNY Mellon has not established that these statements amount to the "storm warning" referenced in *Travis*.

[the beneficiary's] failure to exercise due diligence; and, b) prejudice to the [trustee] resulting from the delay." *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988).

Viewing the facts available in the light most favorable to Plaintiffs, BNY Mellon has not established at this juncture either that Plaintiffs failed to exercise due diligence or that BNY Mellon was prejudiced by any delay. Based on the foregoing, this Court denies BNY Mellon's motion for summary judgment because the evidence does not establish that Plaintiffs' claims are barred by the doctrine of laches.

### C. Standing

BNY Mellon next asserts that this Court should dismiss at this juncture any claims Plaintiffs are asserting with regard to funds "that their trusts never held." BNY Mellon's Br. (ECF No. 165) at 22. It is BNY Mellon's position that "Plaintiffs lack constitutional standing to pursue claims related to those funds." *Id*. It is Plaintiffs' position that where, as here, Plaintiffs have established constitutional standing, any decisions about which funds should be included in the lawsuit are better left for class certification. Pls.' Br (ECF No. 186) at 27.

"The Federal Constitution prohibits courts from taking jurisdiction over disputes that do not involve a justiciable case or controversy." *Nat'l Ass'n for the Advancement of Multijurisdictional Prac. (NAAMJP) v. Castille*, 66 F. Supp. 3d 633, 639 (E.D. Pa. 2014). To establish standing, a plaintiff "must have suffered an injury in fact." *Id*. (internal quotation marks omitted). "Furthermore, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id*. (internal quotation marks omitted).

Here, BNY Mellon does not contest Plaintiffs' standing as to their breach of fiduciary claim against BNY Mellon with respect to 34 of the 115 funds they mention; rather, BNY Mellon contests Plaintiffs' standing to bring the same breach of fiduciary claim against the same defendant

13

with respect to the "other 81 funds." BNY Mellon's Br. (ECF No. 165) at 22. However, Plaintiffs are not asserting claims against a specific fund;[11] instead, they assert that a broader claim against BNY Mellon based upon its policy channeling trust assets into affiliated funds which it contends caused harm. *See Urakhchin v. Allianz Asset Mgmt. of Am.*, L.P., 2016 WL 4507117, at *5 (C.D. Cal. Aug. 5, 2016) (holding that plaintiffs have alleged constitutional standing as to all challenged funds because "the non-speculative harm Plaintiffs allegedly suffered relates to the Defendants' Plan management and fund selection process as a whole rather than the unique factual nature of individual funds").

Here, BNY Mellon does not identify any plaintiff or cause of action this Court should dismiss, but rather seeks to limit the class of claims that Plaintiffs may raise, advice, or prevail upon; however, the exact parameters of the class itself is more appropriately left to the class-certification stage. Accordingly, this Court BNY Mellon's motion for summary judgment with respect to 81 funds is denied.

### D. Bertha Finkenauer Trust

Finally, BNY Mellon contends that it is entitled to summary judgment with respect to Plaintiff Martin's claim regarding the Bertha Finkenauer trust. BNY Mellon's Br. (ECF No. 165) at 24-25. By way of background, Plaintiff Martin is a current beneficiary of the Elmer Finkenauer trust. Plaintiff Martin was a beneficiary of the Bertha Finkenauer trust. The SAC asserts a claim against BNY Mellon on behalf of Plaintiff Martin only in her capacity as a trustee of the Elmer Finkenauer trust. *See* SAC (ECF No. 65) at ¶ 4. However, it is BNY Mellon's position that the

---

[11] *Cf. David v. Alphin*, 817 F. Supp. 2d 764, 781 (W.D.N.C. 2011) (granting summary judgment with respect to Count V and holding that plaintiffs lacked standing where they "contend[ed] that defendants breached their fiduciary duties when they selected the Columbia Quality Plus Bond, which is also a bank affiliated fund," but never actually participated in the fund).

Bertha Finkenauer trust fits the class definition proposed by Plaintiffs, and summary judgment at this time is appropriate because Martin signed a release with respect to this trust.

At this point, the Court has not ruled on Plaintiffs' motion for class certification. If, as BNY Mellon asserts, Plaintiffs attempt to include the Bertha Finkenauer trust as part of the class, BNY Mellon may raise this issue at that time. Thus, because adjudication of that issue at this time is premature, summary judgment is denied.

### IV. Conclusion

Accordingly, upon review of the briefs, CSFs, and Appendices, BNY Mellon's motion for summary judgment is DEFERRED with respect to damages and DENIED with respect to BNY Mellon's arguments regarding surcharge, the statute of limitations, the 81 funds, and the Bertha Finkenauer trust.

DATED this 2nd day of March, 2022.

s/*Robert J. Colville*

Robert J. Colville
United States District Judge

cc:     Counsel of record